Norfleet SAWYER, Appellant,

v.

Franklin K. BROUGH, Warden, Maryland Penitentiary, Appellee.

No. 10145.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 5, 1965.

Decided March 14, 1966.

Fred Oken, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before SOBELOFF and BOREMAN, Circuit Judges, and MICHIE, District Judge.

BOREMAN, Circuit Judge:

Norfleet Sawyer is currently serving a twenty-year prison sentence for robbery with a deadly weapon. On this appeal from the District Court's denial of his petition for a writ of habeas corpus,[1] he presses only one of the constitutional challenges to his conviction which he raised before the lower court. He contends that he was denied the effective assistance of counsel [2] in the proceedings which led to his conviction in the Maryland court by reason of the fact that both he and his codefendant, whose interests conflicted with his own, were represented at their joint trial by the same court-appointed attorney. The District Court found that there was no conflict of interest as between Sawyer and his codefendant, Espin. With this finding we are unable to agree.

The robbery for which Sawyer and Espin were convicted occurred at about 2 a. m. on January 31, 1962. The victim of the robbery, a taxi driver, reported the crime and gave the police a description of his assailants as soon as they had fled. Shortly thereafter, Sawyer and Espin were apprehended by the police near the place where the robbery had occurred. When first sighted, Espin, dressed in women's clothing, was standing on a street corner and Sawyer was emerging from a vacant house nearby. Sawyer ran but was pursued and apprehended by one of the officers in the basement of another vacant house in the vicinity. Espin apparently made no attempt to flee and was placed under arrest. In any event it is clear from the transcript of testimony in the trial

George Beall, Baltimore, Md. (Court-assigned counsel) for appellant.

1. The District Court's opinion is reported at 239 F.Supp. 898.

2. Sawyer does, at certain points in his brief, assert that he was denied a fair trial and procedural due process. However, he raises these points only in connection with his denial of the effective assistance of counsel argument and in his discussion treats them as subsumed by the latter argument.

court, which is a part of the record in this proceeding, that following arrest Sawyer was placed in the police wagon with Espin and taken to a police station with him.[3]

Sawyer steadfastly denied that he participated in the robbery. Such was not the case with Espin. Within a few hours after his arrest he confessed his guilt in a written statement to the police which is reproduced, in pertinent part, in the margin.[4] In this statement, which was admitted in evidence at the trial, Espin declared that he did not know the name of the other participant in the robbery. He referred to that individual in his statement as the "other fellow," the "other party," and the "party that I was with." The portion of his confession which is of particular interest on this appeal is Espin's statement that after he had been arrested and placed in the police wagon, "then they brought *the other party* into the wagon. He mentioned I don't know you and you don't know me, then was brought to the jail place." (Emphasis added.)

At arraignment of Sawyer and Espin the judge asked if there was any conflict of interest in the case. The prosecuting attorney first replied, "I think there is." He immediately recanted, saying, "No, there is no conflict in this one." At the request of the two defendants the court appointed counsel to represent them and, being assured that their interests did not conflict, designated the same attorney to represent both. Prior to trial their attorney conferred with them at the jail and each defendant denied having given any statement or confession to the officers. The trial was before the court without a jury. The prosecution took counsel by surprise when Espin's confession was offered and admitted in evidence. Counsel was permitted to examine the confession but, failing to perceive the indirect implication of Sawyer, he continued to represent both defendants.

In view of the context in which this statement was made, Espin having continually referred to his partner in the robbery as the "other party" or by a

3. The testimony upon which we rely is that given by Officer Portera appearing in the transcript of proceedings in the state trial court.

4. "Q. Now in your own words tell us about this assault and robbery of this cab driver.
  "A. I met, the *other fellow* whose name I do not know in Gamby's tonight, the earlier part of the evening, we didn't say too much then because he left and I left and went to the Moon Glo around about 10 PM. Then I went back to Gamby's and set for awhile and the *other party* came and we talked and had some drinks. Before Gamby's closed we went out and was walking down Pennsylvania Ave. when he told me to hail a cab that he was going to rob it. For me to set in front and him in the back. I told him I didn't want to do it at first because I didn't want to get into any trouble. He said it was nothing to worry about that he would take care of everything himself. So I hailed the cab, got in front and him in the back. The driver took us to Edmondson and Bruine St. I got out and looked through the window, *the party that I was with* hit the driver

with a hammer. The cab driver got from the front to the back both were scrambling in the back seat, then the door of the cab came open and both came out. *The party that I was with* was running and hit the cab driver up toward Edmondson Ave. Then they came back toward the cab. *The party that I was with* told the cab driver to go his way and don't mention anything about it or say anything. I was standing on the corner and that is when I grabbed the bag when the driver and *the party I was with* was on the way back to the cab. And then we went to a vacant house, divided the money, he gave me $5.00 some change that was in the bag. Then he told me to go ahead home, so I left, I was going up George St. toward Fremont Ave. when the Policemen came, I was picked up and was told that I was under arrest. I asked "For What" and was told to get in the wagon. After that I don't know what was going on in the street, then they brought *the other party* into the wagon. He mentioned I don't know you and you don't know me, then was brought to the jail place." (Emphasis added.)

similar descriptive term, it is inconceivable to this court that he could have been referring to anyone other than Sawyer when he said that the "other party" was put into the wagon with him. As already mentioned, we know from the testimony of Portera, the arresting officer, that it was Sawyer who was placed in the police wagon with Espin. We think it clear that Espin's statement of confession thus indirectly identified and incriminated Sawyer as his co-felon.

An obvious divergence of interest exists between a defendant who denies his guilt and a codefendant who not only confesses his own complicity but also accuses the other of participation in the crime. The conflict is even more crucial in the instant case by reason of the fact that Espin's confession attempts to cast most of the blame for the robbery onto the "other party." In such a situation the parties are placed in adversary and combative positions. The interest of Sawyer would lie in discrediting Espin's statement of confession, particularly that portion which incriminated Sawyer, while Espin would necessarily be concerned with pursuing his attempt to appear less culpable than the other participant, who is indirectly identified as Sawyer. We conclude that it would be utterly impossible for one attorney to effectively serve both of these conflicting interests. He would be rendered impotent to effectively assist one by the necessity of protecting the other.

■ We realize that this conflict of interest between Sawyer and Espin may not have made its presence felt in their trial and conviction. As is apparent, the trial court did not view Espin's statement as implicating Sawyer. Accordingly, that court ruled that the confession was admissible against Espin, but Espin only. Moreover court-appointed counsel testified at the hearing before the District Court that he had not felt that any conflict of interest existed between the two defendants since he had not viewed the confession as inculpating Sawyer. Thus the attorney's testimony implies that he was not hampered in his representation of either defendant by any attempt to accommodate divergent interests, and that he gave his full efforts and loyalty to each.

■ Despite these appearances, we cannot be persuaded that the jealously guarded constitutional right to effective assistance of counsel has been accorded to Sawyer. Most assuredly we do not mean to impugn the integrity of court-assigned counsel, but there was no finding by the District Court that counsel was not handicapped in his representation of the two defendants by the conflict of interest. The District Court found that no conflict existed and did not go beyond that finding. Under these circumstances, we cannot, on the mere strength of the attorney's testimony, dismiss as without merit Sawyer's claim that the right of effective representation has been denied him.

■■ The salient fact remains that divergent interests did exist, and therefore an opportunity was presented for the impairment of Sawyer's right to the unfettered assistance of counsel. It is not necessary that Sawyer delineate the precise manner in which he has been harmed by the conflict of interest; the possibility of harm is sufficient to render his conviction invalid. In Glasser v. United States, 315 U.S. 60, at pages 75–76, 62 S.Ct. 457, at page 467, 86 L.Ed. 680 (1942), the Court stated that:

> "To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."
>
> \*   \*   \*   \*   \*   \*

Had the conflict of interest between Sawyer and Espin been detected prior to or during their trial, the first prudent step which any lawyer single-mindedly devoted to Sawyer's best interests would undoubtedly take would be to move for a severance. Had separate trials been

held, the incriminating confession of Espin could not have been offered in evidence. Sawyer also would have been spared the possibly prejudicial effect, whether the trier of fact was judge or jury, of having as a codefendant one who has confessed his participation in the alleged crime. A conviction of Sawyer in a separate trial would by no means have been assured, even though the evidence against him, independent of the confession, was seemingly strong. Even though the trial court had denied a motion for severance, assuredly separate counsel for each defendant would have been provided when the conflict of interest became apparent.

The fact that the trial court apparently failed to appreciate the possibility that Sawyer's constitutional right was being infringed by the appointment of a single attorney to represent both defendants clearly has no bearing on the result which we reach. Persuasive on this point is Holland v. Boles, 225 F.Supp. 863 (N.D.W.Va.1963), wherein the court stated the following:

"There remains for consideration the effect, if any, of the fact that the record here is devoid of proof that either the regular judge or the special judge was sufficiently aware of the factual situation to recognize and appreciate the inevitable conflict of interests. The effect upon the accused is the same whether or not the court knew Holland was improperly represented. He has not been accorded the effective representation by counsel to which he is constitutionally entitled * * *. Judge Denman, of the Ninth Circuit, in the original opinion in Hayman v. United States, 187 F.2d 456, at page 460 (1951), has this to say: 'If, unknown to the court, the accused's counsel were bribed by an enemy of the accused to throw his case and the accused learned of it after conviction, the fact that the court had nothing to do with the wrong done, does not deprive him of his right to the writ.'"

We find no merit in the contention of the respondent, seemingly half-heartedly asserted, that Sawyer waived his right to challenge the appointment of one attorney to represent him and Espin by failing at the trial to object to that appointment or to make known the conflict of interest. There is nothing to indicate that Sawyer intentionally relinquished any known right.

The case is remanded to the District Court with instructions that Sawyer be released from custody of the respondent unless the State of Maryland elects within a reasonable time to give him a new trial.

Reversed and remanded.