George T. C. **LOLLAR**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 20300.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 21, 1966.

Decided March 20, 1967.

Petition for Rehearing Denied
May 3, 1967.

Bazelon, Chief Judge, dissented.

Mr. Hugh A. M. Shafer, Jr., Washington, D. C. (appointed by this court), for appellant.

Mr. Elihu I. Leifer, Atty., Dept. of Justice, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Nicholas S. Nunzio, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and WRIGHT, Circuit Judge.

J. SKELLY WRIGHT, Circuit Judge:

Appellant and a co-defendant, Ford, were convicted of robbery and assault with a dangerous weapon.[1] One attorney was appointed to represent both indigent defendants. Appellant now asserts that requiring him to share an attorney with his co-defendant deprived him of his constitutional right to effective assistance of counsel. We agree and hold that appellant is entitled to a new trial with the aid of his own attorney.

The Supreme Court long ago observed that "the 'Assistance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests," Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942), a principle incorporated in the Criminal Justice Act of 1964.[2] Glasser and numerous cases following it have established the rule that, where a defendant has been prejudiced as a result of having to share his attorney with another defendant and he has not waived his objections thereto, he must be granted a new trial.[3] Indeed, we recently had occasion to reaffirm this rule in Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359 (1965), where we strongly emphasized the importance of separate counsel and expressly pointed out that "a trial judge has a responsibility to assure that co-defendants' decision to proceed with one attorney is an informed decision." 122 U.S.App.D.C. at 145, 352 F.2d at 361. Accordingly, Lollar's contention raises several questions. First, did the District Court, in assigning counsel to represent appellant and his co-defendant jointly, consider the possibility of prejudice arising from joint representation? Second, did the District Court advise appellant of his rights with respect to separate counsel? Third, did appellant waive his rights? Fourth, was appellant prejudiced?

1. Both were also charged with possessing a dangerous weapon, but only Ford was convicted of this after it developed at trial that Lollar never had possession of the weapon.

2. 18 U.S.C. § 3006A(b): "[T]he court shall appoint separate counsel for defendants who have such conflicting interests that they cannot properly be represented by the same counsel * * *."

3. See, e. g., Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359 (1965); United States v. Bentvena, 2 Cir., 319 F. 2d 916, 937, cert. denied, sub nom. Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); Craig v. United States, 6 Cir., 217 F.2d 355 (1954).

## I

 The answers to the first two questions are not forthcoming from the record presented to us in this case, for it is devoid of any suggestion that the District Court, in assigning counsel, considered the risks of joint representation, explained them to appellant and his codefendant, or advised them of their right under the Criminal Justice Act to have separate counsel if their interests were so conflicting that they could not properly be represented by the same counsel.[4] We have been given no explanation for this omission and are unable to construct a satisfactory answer of our own. Certainly it is in contravention of longstanding principles of both this court and the Supreme Court. As the Court said in Glasser v. United States, *supra*, 315 U.S. at 70, 62 S.Ct. at 465: "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. * * * The trial court should protect the right of an accused to have the assistance of counsel. 'This protecting duty imposes a serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.' Johnson v. Zerbst, 304 U.S. 458, 465, [58 S.Ct. 1019, 82 L.Ed. 1461]." In terms no less clear we observed in Campbell v. United States, *supra*, that " * * * [a]n individual defendant is rarely sophisticated enough to evaluate the potential conflicts [that can arise from joint representation], and when two defendants appear with a single attorney it cannot be determined, absent inquiry by the trial judge, whether the attorney has made such an appraisal or has advised his clients of the risks. Considerations of efficient judicial administration as well as important rights of defendants are served when the trial judge makes the *affirmative* determination that co-defendants have intelligently chosen to be represented by the same attorney and that their decision was not governed by poverty and lack of information on the availability of assigned counsel." (Footnote omitted.) (Emphasis added.) 122 U.S.App.D.C. at 145, 352 F.2d at 360.[5]

 It is true that this case is unlike *Campbell* in that counsel was appointed by the District Court rather than retained by the defendants. However, we see no reason why in assigned-counsel cases the responsibility to advise defendants of their rights and the potential problems of joint representation should be any less than where counsel is retained. Quite the contrary. Not only does the Criminal Justice Act indicate otherwise, but the indigent is entitled to assume that the court, in actively aiding him in obtaining counsel, will advise him of *all* rights and matters relevant to ap-

4. 18 U.S.C. § 3006A(b). *And see* Lebron v. United States, 97 U.S.App.D.C. 133, 137, 229 F.2d 16, 20 (1955), *cert. denied*, 351 U.S. 974, 76 S.Ct. 1035, 100 L.Ed. 1492 (1956).

5. We take note of information indirectly brought to our attention by counsel for appellant's co-defendant, Ford, who is in the process of separately appealing to this court. In his brief Ford's counsel on appeal indicates that on October 23, 1965, when Lollar and Ford were brought before the Court of General Sessions sitting as committing magistrate, the court appointed Mr. Robert M. Price to represent **both** defendants; and that, after Mr. Price had a brief discussion of the case with defendants, the court asked whether any reason appeared for appointing separate counsel, to which he received a negative answer. There is no transcript of the proceedings in the Court of General Sessions, however, so these events do not appear in the record. As *Campbell* made clear, absent affirmative indications in the record to the contrary we must assume co-defendants' decision to proceed with joint counsel was not an informed one. The record to which we are confined shows that Lollar and Ford were arraigned in the District Court on January 14, 1966; that Mr. Price was reappointed as joint counsel; and that no consideration was given to the question of separate representation.

pointment of counsel. *Compare* Smith v. United States, 122 U.S.App.D.C. 300, 353 F.2d 838 (1965), *cert. denied*, 384 U.S. 910, 974, 86 S.Ct. 1350, 16 L.Ed.2d 362 (1966). Certainly, whatever risks and disabilities inhere in joint representation inhere whether counsel is appointed or retained; and whatever steps a defendant is entitled to take to avoid such problems should be made known to him whatever his economic situation may be.[6] Therefore, since nothing in the record indicates that appellant was so advised, he of course cannot be said to have waived rights of which he was unaware.

## II

■ It remains to be considered whether appellant was prejudiced by joint representation. It is settled that some prejudice, some conflict of interest, resulting from the joint representation must exist before one can be said to have been denied effective assistance of counsel. What constitutes sufficient prejudice, however, is uncertain, some courts apparently requiring a very strong showing of actual prejudice,[7] others suggesting the possibility of prejudice is sufficient.[8] The several joint-representation

cases in this Circuit have contributed to this uncertainty because, although some have found prejudice and some have not, none has formulated a standard for determining when prejudice can be said to exist.[9] Given the critical importance of such a finding, some standard should be made explicit.

■ We take as our guideline the Supreme Court's admonition in *Glasser* that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U.S. at 76, 62 S.Ct. at 467. The obvious reason against insisting on a precise delineation of the prejudice suffered is that such a task is made very difficult when one must rely on a cold, printed record for reconstruction of the manifold and complex dynamics of the trial process, including reasons for trial tactics which may have been dictated by the joint representation. Like the famous tip of the iceberg, the record may not reveal the whole story; apparently minor instances in the record which suggest co-defendants' conflicting interests may

---

6. Whether indigents' access to separate counsel should be conditioned—as both Lebron v. United States, *supra* Note 4, and 18 U.S.C. § 3006A(b) contemplate —on the ability, at the outset of the trial process, to predict prejudice arising from joint representation may well raise serious questions as to discrimination between indigents and non-indigents, who may retain separate counsel at will. *Cf.* Coppedge v. United States, 369 U.S. 438, 446–448, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Note, *Equal Protection and the Indigent Defendant: Griffin and Its Progeny*, 16 Stan.L.Rev. 394, 405–409 1964). *But cf.* United States v. Dardi, 2 Cir., 330 F.2d 316, 335, *cert. denied*, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964). However, since appellant was not even advised of his rights under § 3006A (b) and *Lebron* and since, as we shall discuss shortly, this led to appellant's prejudice, we need not delve into these broader questions.

7. *See, e. g.,* Lott v. United States, 5 Cir., 218 F.2d 675 (1955); United States v. Burkeen, 6 Cir., 355 F.2d 241, *cert. denied, sub nom.* Matlock v. United States, 384 U.S. 957, 86 S.Ct. 1582, 16 L. Ed.2d 553 (1966); Lugo v. United States, 9 Cir., 350 F.2d 858 (1965).

8. *See, e. g.,* Glasser v. United States, 315 U.S. 60, 75–76, 62 S.Ct. 457 (1942); United States v. Dardi, *supra* Note 6; Sawyer v. Brough, 4 Cir., 358 F.2d 70 (1966); Craig v. United States, *supra* Note 3; Commonwealth ex rel. Whitling v. Russell, 406 Pa. 45, 176 A.2d 641 (1962). *And see* Waltz, *Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases*, 59 Nw.U.L.Rev. 289, 334 (1963); Note, *The Right to Effective Counsel in Criminal Cases*, 9 Vand.L.Rev. 1920, 1926 (1965).

9. *Compare* Campbell v. United States, *supra* Note 3, *with* Lebron v. United States, *supra* Note 4; Wynn v. United States, 107 U.S.App.D.C. 190, 275 F.2d 648 (1960).

well be the telltale signs of deeper conflict. Because of this, and because of the fundamental nature of the right involved, when there are indications in the record that stir doubts about the effectiveness of joint representation, those doubts should be resolved in favor of the defendant, particularly where, as here, the record fails to indicate whether in assigning counsel the danger of prejudice from joint representation was considered.

We hold, therefore, that only where " 'we can find no basis in the record for an informed speculation' that appellant's rights were prejudicially affected," can the conviction stand. Anderson v. United States, 122 U.S.App. D.C. 277, 279, 352 F.2d 945, 947 (1965); Shelton v. United States, 120 U.S.App. D.C. 65, 66, 343 F.2d 347, 348, cert. denied, 382 U.S. 856, 86 S.Ct. 108, 15 L. Ed.2d 93 (1965). In effect, we adopt the standard of "reasonable doubt," a standard the Supreme Court recently said must govern whenever the prosecution contends the denial of a constitutional right is merely harmless error. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 18 L.Ed.2d 241 (1967). Such a standard is clearly appropriate in the present context as well, where to find prejudice is to decide that the defendant has been denied effective assistance of counsel. When measured against this standard, the record in the present case fails to convince beyond a reasonable doubt that appellant was not prejudiced because of the joint representation.

Concededly the indicators of prejudice are not very strong; but they are troublesome enough to lead to "an informed speculation" that Lollar may have been actually prejudiced. First, throughout his testimony appellant's co-defendant referred to Lollar as "Miss Lollar," "Miss Lolly," "she," or "Sister." Lollar had already admitted that he had been a homosexual all his life and that it was particularly annoying or bothersome to him to be referred to as a man; moreover the defense was premised on his and Ford's claim that the complainant had been engaging in homosexual acts with them. Thus we cannot with certainty say the female references were prejudicial. But neither can we say they were not. Compare Sawyer v. Brough, 4 Cir., 358 F.2d 70 (1966). For example, the jurors no doubt were startled to hear Lollar referred to in such a manner; it may be they were more than startled. It is fair to assume that defenses incorporating admissions of homosexuality are best conducted with discretion and good taste, and, in fact, Lollar's testimony concerning his homosexuality appears to have been very much of this character. Ford, however, by referring to Lollar as he did, may have aroused in the jurors a feeling of revulsion, causing them to react against both defendants out of moral disgust. Had Lollar been represented by his own attorney, the attorney would have been in a position to observe the jury and evaluate firsthand whether Ford's terminology was damaging his client, whether Ford should have been asked to refer to Lollar in the male gender. It is difficult to see how the attorney jointly representing Lollar and Ford could have objected, because he was conducting the examination of Ford when the words were used.

Another indicator of possible prejudice is that counsel allowed Lollar to take the stand in spite of his criminal record, which was elicited by the prosecution for impeachment purposes. While it is clear that either Lollar or Ford had to take the stand to establish their defense—there being no other eyewitnesses for the defense—there is no suggestion that both had to testify. Thus, had it been clear that Ford was going to testify in any event, an attorney concerned solely with Lollar's interests might have decided to keep Lollar off the stand. As it was, the attorney with both defendants' interests at stake may have been motivated to call both simply to appear evenhanded in his treatment of each of his clients.

Finally, counsel twice confused Lollar with Ford, both times having to be corrected by the trial judge. Although

these slips are of course not necessarily prejudicial, they do underscore the inherent difficulty of joint representation —that is, one attorney having to keep individual defendants and their interests separate and free of conflict. But even more importantly, they and the other indicators noted illustrate the difficult task an appellate court faces in sifting through a record to determine after the fact whether defendants—who, had they been properly advised, might have proceeded to trial with separate counsel— were denied their constitutional right to effective assistance of counsel.

Reversed for a new trial.

BAZELON, Chief Judge (dissenting):

If this were a case of first impression, I would seriously consider reversing the conviction without any showing of prejudice. An absolute rule requiring separate lawyers (unless there is an intelligent waiver) would free this court from the impossible task of speculating about what might have happened at a trial in which each defendant had his own lawyer. And it would free the trial judge, who must decide how many lawyers to appoint, from guessing before the trial whether something at the trial would indicate to us a conflict of interest among the defendants. However, the present rule requires a showing of prejudice, and, although this is not an easy case, I do not think prejudice appears.

Chapman v. California, 386 U.S. 18, 18 L.Ed.2d 241, 87 S.Ct. 824 (Feb. 20, 1967), upon which the majority relies, dealt with whether an admitted constitutional violation was harmful. Here, the question is whether there was a constitutional violation.

Accordingly, I respectfully dissent.