306 So.2d 713 (1975)
STATE of Louisiana ex rel. John THOMPSON, Petitioner-Relator,
v.
C. Murray HENDERSON, Warden, Louisiana State Penitentiary, Defendant-Respondent.
No. 55080.
Supreme Court of Louisiana.
January 20, 1975.
*714 Harold Douglas, Douglas & Favre, New Orleans, for petitioner-relator.
William J. Guste, Jr., Atty Gen., Barbara Rutledge, Asst. Atty Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for defendant-respondent.
TATE, Justice.
The petitioner Thompson was convicted of armed robbery and sentenced to fifty years at hard labor. We affirmed this conviction and that of his co-defendants Wallace and Holland. See State v. Wallace, 254 La. 477, 224 So.2d 461 (1969).
At the trial, all three defendants have been represented by the same counsel. By post-conviction proceedings Thompson claims that he was denied effective assistance of counsel and due process of law. The substance of this contention is that the trial counsel, who had been retained by Wallace but appointed to represent Thompson and Holland, permitted the introduction of evidence prejudicial to Holland and to the present petitioner (Thompson), in advancing an alibi defense by Wallace.
As to the co-defendant Holland, the federal courts have sustained these contentions and have ordered a retrial because of denial of a fair trial to Holland. See Holland v. Henderson, D.C.La., 317 F.Supp. 438 (1970), affirmed (with full opinion) 460 F.2d 978 (CA 5, 1972).
We ordered an evidentiary hearing upon these allegations by Thompson. La., 293 So.2d 173 (1974). When after hearing the trial court denied relief, we granted supervisory writs to review this ruling. La., 299 So.2d 797 (1974).
*715 The records at the trial and at the evidentiary hearing show the following:
The three defendants were initially arrested in connection with the January 13, 1967 armed robbery of the National Bank of Commerce. Following their arrest, on January 15th, Wallace's mother retained counsel, at least for him. At approximately the same time, the three defendants were also charged with four counts in connection with an armed robbery of Hilda's Jazz Bar, which had occurred five days (January 8, 1967) previous to the bank robbery.
At the magistrate's hearing on January 18, 1967, a notation indicates that both Thompson (Tr. 17), and Holland (Tr. 19) named Wallace's attorney as their own. See our docket No. 49,574, which had been filed in this court on November 26, 1968. At the recent evidentiary hearing, Holland and Thompson stated that they had no lawyer, but that the magistrate had instructed Wallace's lawyer to represent them. This lawyer has no independent recollection of the incident. However, his only record, a 1967 appointment diary, indicated that he was representing Wallace alone. But see counsel's incidental statement, at the original trial, that he had represented all three defendants continuously since January 16, following their arrest for the bank robbery. Tr. 150.
Subsequently, Wallace and Thompson pleaded guilty to the bank robbery (but Holland did not), just before the trial for the Hilda's Jazz Bar robbery on April 24-25, 1967. At such trial, as earlier stated, the same counsel represented all three defendants. During the trial, only Wallace and an alibi witness for him testified for the defense.
On direct examination, Wallace testified as to his alibi. On cross-examination by the state, he was asked as to the National Bank of Commerce robbery. He freely admitted that he had pleaded guilty to this robbery, that he had robbed the bank, and that Thompson (alone) was his associate in the robbery.
At this point, the state questioned him as to a prior contradictory statement, by which he had admitted that not only Thompson but also Holland had joined him in the bank robbery (and in which he amplified Thompson's participation in it as co-planner and as thief of the automobile used in the crime).
No objection was made by counsel, nor was any motion made to restrict the statements as to the limited purposes for which then admissible under Louisiana law (i. e., restricting their effect to the credibility of the witness testifying, La.R.S. 15:495, cf. State v. Mack, 243 La. 369, 144 So.2d 363 (1962)[1]).
Based on this incident, the federal courts set aside Holland's conviction for reasons similar to those now argued by the petitioner Thompson. Nevertheless, the prejudice Holland sustained is different in character than that caused the petitioner Thompson.
For one thing, Wallace at the trial had denied that Holland was involved in the bank robbery, but nevertheless Wallace's *716 out-of-court statement was used to implicate Holland in itand this unsworn statement, theoretically used to attack Wallace's credibility, tended, at least without caution by the court, to prove inadmissibly that Holland was a bad man who committed robberies.[2] Thus, while the statement might have been admissible against Wallace, it was not so as against Hollandbut Wallace's counsel, by objecting to it on behalf of Holland so as to restrict its effect on Wallace, would tend to emphasize the damning quality of it as against Wallace.
Because of the joint representation by a single counsel, Wallace's testimony necessary to prove his alibi defense exposed Holland (but not Thompson) to jury knowledge of a claim that he had participated in another crime, a bank robbery, of which the jury could not otherwise have received notice.
As the federal courts held in ordering a new trial for Holland, the appointment of joint counsel for two or more defendants may involve a denial of due process and of effective representation of one when, due to conflicting interests of the defendants, the usefulness of the attorney's representation of one defendant is hampered, such as (in serving the interest of another defendant) by inhibiting the attorney from objecting to evidence incompetent against the former or from full cross-examination. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Buffalo Chief v. State of South Dakota, 425 F.2d 271 (CA 8, 1970); Baker v. Wainwright, 422 F.2d 145 (CA 5, 1970); Sawyer v. Brough, 358 F.2d 70 (CA 4, 1966); Campbell v. United States, 122 U. S.App.D.C. 143, 352 F.2d 359 (1965); Wynn v. United States, 107 U.S.App.D.C. 190, 275 F.2d 648 (1960). See also American Bar Association Standards Relating to the Administration of Criminal Justice, Standard 3.5 Relating to the Defense Function (1974 Compilation).
Yet, although joint representation must be closely scrutinized by both counsel and court to avoid such a conflict, such joint representation does not constitute a cause for a new trial when there was no actual conflict of interest between jointly represented defendants which had the potential of depriving an individual of the effective assistance of counsel at his trial. See decisions cited above and those discussed in Comment, Criminal Codefendants and the Sixth Amendment: Case for Separate Counsel, 58 Georgetown L.J. 369 (1969). After careful study of the evidence at the trial and at the recent evidentiary hearing, we conclude there was no such conflict of interest.
With regard to the present petitioner Thompson, Wallace's testimony that he himself and the petitioner Thompson had robbed the bank was part of a joint trial strategy by them to cast doubt upon the contemporaneous charges against them of the present robbery of the Hilda's Jazz Bar some five days earlier than the bank robbery.
Their counsel's opening statement was to the effect: The defendants were home in bed at the time of the present robbery. They were arrested after the well publicized bank robbery and had pleaded guilty to that charge. They did not deny having guns found on them which had been used in the bank robbery. However, they were being charged with the present tavern robbery simply because the police had decided to close out the pending investigation of it by charging the bank robbers with its commission also. See Tr. 67-69; our docket No. 49,574.
In accord with that strategy, Wallace took the stand and, upon cross-examination, *717 freely admitted his and the present petitioner Thompson's participation in the bank robbery, without any objection by their counsel.
These intentional trial tactics come perilously close to demonstrating incompetent advocacy (at least as viewed from the cold record some years later). Nevertheless, the tactics may not have seemed so foolish, in the face of the actual evidence against these defendants and their actual situation at the time of the trial.
Just before the present trial, they had both pleaded guilty to the bank robbery, which had been committed within a few days of the present crime. The eyewitness evidence that they had committed the present robbery was strong and unshakeable. They were found with guns in their possession similar to those used in the robbery.
According to the opening statement of their counsel, their defense was alibi. If Wallace and Thompson took the stand in support of their alibi, evidence as to their guilty pleas (convictions) to the contemporaneous bank robbery was admissible as to the credibility of these witnesses.
The apparent tactic was, by their candor as to their participation in the bank robbery, to hope that the jury would find that they were equally candid in their claim of non-participation in the present robbery. Their guilty connection with the contemporaneous bank robbery was inevitable as to either, if either took the stand to testify as to their presence elsewhere. And, it is to be remembered, the sole claim of conflict of interest between the jointly represented defendants is based upon the contention that, when Wallace took the stand to prove his own alibi, he inevitably exposed his codefendant Thompson to disclosure of Thompson's participation in the bank robbery.
The tactics were certainly not successful, and the defense was not very convincing. (It took the jury between 5:08 and 5:25 p. m. to reach verdicts in the three cases.) Perhaps, however, there was no better tactic available, in the face of the overwhelming evidence of guilt and lack of exculpatory evidence.[3]
The only claim of lack of due process and ineffective legal representation is based upon the alleged conflict of interest between the defendants represented jointly by one counsel. As noted, we find none. Neither the record of the evidentiary hearing, nor of the trial itself, indicates that by this joint representation the counsel's defense of the petitioner Thompson was prejudiced.
We therefore affirm the judgment, dismissing the petitioner's application for a new trial by way of post-conviction relief.
Affirmed.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
I am of the opinion that the majority itself has admitted in its representation of the facts that relator's counsel was incompetent. See also Holland v. Henderson, 317 F.Supp. 438 (E.D.La.1970).
I respectfully dissent.
NOTES
[1] Of course, subsequent to the trial below, Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) held that, where a co-defendant's confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant implicated by the co-defendant's conviction is denied his constitutional right of confrontation. Since Bruton is retroactive, Roberts v. Russell, 292 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), Thompson's further contention now is that his conviction should be annulled by reason of the Bruton rationale.

We find no merit to this further contention. He was not denied confrontation: Wallace directly testified that. Thompson was his confederate in the bank robbery, and was available for cross-examination by Thompson at this point (assuming Thompson had effective counsel, the principal issue above).
[2] Actually, when subsequently tried for the bank robbery, Holland was acquitted. As noted earlier, Thompson and Wallace had pleaded guilty to it prior to the trial for the present robbery.
[3] The evidentiary hearing on May 30, 1974 was addressed to the issue of inadequate representation because of the claimed conflict of interest, and the evidence mostly concerned whether the attorney had been appointed for Thompson or retained by him (without fee). For this reason, perhaps too much should not be made of the failure of the relator at this hearing to suggest any specific witnesses or defenses of which he was deprived by inadequate legal representation. (He does contend, however, that the two days' advance notice of the trial given him by his attorney was too short a time to get in touch with his witnesses. Tr. 21, 108.)