**STATE of Minnesota, Respondent,**

v.

**Charles Robert WALKER, Appellant.**

**No. A04–1099.**

Court of Appeals of Minnesota.

May 17, 2005.

Petition for Review Denied July 19, 2005.

Mike Hatch, Attorney General, Tibor M. Gallo, Assistant Attorney General, St. Paul, MN; and Alan L. Mitchell, St. Louis County Attorney, Duluth, MN, for respondent.

John M. Stuart, State Public Defender, Jodie L. Carlson, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, TOUSSAINT, Chief Judge, and PETERSON, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Charles Robert Walker and his co-defendant wife, Dawn Walker, were charged with aiding and abetting each other in the commission of felony check forgery and theft in violation of Minn.Stat. §§ 609.05, 609.631, subd. 2(1), 609.52, subd. 2(1) (2002). The charges arose from allegations that over a period of several months in 2002, Dawn Walker had issued unauthorized checks to herself and appellant from the account of their employer, Kodiak Home Improvement Company, and that they had taken certain movable property from their employer.

At the Walkers' request, the cases were consolidated for trial. Prior to trial, Dawn Walker's attorney withdrew. On the first day of trial, the parties moved to allow appellant's attorney to jointly represent them, and the district court granted that request. Following a two-day trial, the jury returned verdicts finding both parties guilty.

Because the district court failed to engage in an affirmative inquiry to determine whether appellant validly waived his right to have a separate attorney and because the state failed to show beyond a reasonable doubt that a prejudicial conflict of interest did not exist during trial, we reverse and remand.

## FACTS

In 1999, Tim Morgan, the owner of Kodiak Home Improvement Company (Kodiak), hired appellant's wife, Dawn Walker. She was initially hired as a receptionist, but soon was given additional responsibilities, including the authority to write checks on Kodiak's business account. In early 2002, Morgan gave Dawn Walker a pay increase, and she became the office manager and assumed additional duties, such as planning jobs and running the day-to-day affairs of the office. Dawn Walker had full access to all the company records and was in the process of transferring the information from company ledger books into the computer. During this time, appellant also worked for Kodiak as a subcontractor and mechanic.

In July 2002, after Morgan injured his shoulder, he spent less time in the office and on job sites. At the end of August 2002, he had surgery. During this time period, Morgan claimed that he relied more on Dawn Walker to run the business and did not closely monitor her.

On October 22, 2002, after Morgan had been back to work for a few weeks, Dawn Walker informed him that the office computer had gone down due to a power failure and that she was unable to operate it. She then called in sick for the next three days, and the following Monday, October 28, she telephoned the office and left a message that she was quitting.

Morgan did not know how to get the computer running, and his attempts to

reach Dawn Walker were unsuccessful. Morgan asked another Kodiak employee to help him with the computer. This employee was able to get the computer operational in about half an hour. Once operational, however, it was discovered that most of the business financial records were gone. Morgan was unable to locate the computer disk containing backup information, and the parallel paper records were either missing or incomplete. The check ledger book contained incomplete or deleted entries, and the entries ceased in September 2002. Morgan attempted to contact Dawn Walker, but she did not return his calls.

Some time earlier, Morgan had indicated to appellant that he was not satisfied with his performance on several jobs. Morgan testified that appellant became angry, picked up some tools, threw them into his truck, and left the job site. Morgan claimed that some of the items belonged to Kodiak, including an electric cutting shear, caulking supplies, and paint. Morgan further claimed that appellant had taken an inoperable one-ton Dodge truck without Morgan's permission. Although Morgan admitted that he had agreed to sell the truck to appellant, he claimed that they had never settled on a price; Morgan estimated that the truck was worth approximately $400 to $600.

On November 14, 2002, police received information from a reliable informant that Dawn Walker had issued unauthorized checks on the Kodiak business account to herself and appellant. Morgan was contacted by police and turned over evidence of what he believed were unauthorized or suspicious transactions.

Police thereafter executed a search warrant at the Walker residence. They found items that Morgan claimed belonged to Kodiak, including Office Depot business credit account cards for Kodiak; an Office Depot computer floppy disk, which was marked as "Kodiak backup disk 1"; a reciprocating saw and a circular saw; two aluminum ladder jacks; a box containing ten tubes of caulk; four boxes of siding material or shingles; and other documents imprinted with the Kodiak business logo.

After searching cancelled checks and other financial records that he had, Morgan identified 79 checks that he believed were relevant to the investigation, dating back to March 2002. The total dollar amount of 78 of those checks was $65,181.21; a final check for $3,000 was not paid because it was presented after Morgan had put a hold on the account. All of the checks were signed by Dawn Walker, and most were made out to her or appellant.

At trial, appellant testified that each of the checks represented legitimate payments to him for his work as a subcontractor. He also claimed that the tools in his possession were either broken or belonged to someone else, and that Morgan told him that leftover job materials could be taken home. Appellant further claimed that Morgan had asked him to remove the Dodge truck from the property, but that he never asked appellant for any money.

Dawn Walker testified extensively about the checks and tended to corroborate appellant's testimony that each of the checks represented payments to him for various jobs. She further claimed that her 2002 raise consisted of a salary of $12.50 per hour and another $12.50 per hour in a so-called "banked" account, which she claimed was accessible to her in the spring of 2002. On rebuttal, Morgan denied that he had authorized Dawn Walker to set up a banked account or that he had doubled her salary; he claimed that her full and entire salary was $12.50 per hour based on a 40–hour work week.

The state argued that appellant could be found guilty of theft for taking funds from the business or for the movable property that was found at his residence. The jury found appellant and Dawn Walker guilty of felony check forgery,[1] with an aggregate amount of more than $2,500, and guilty of theft of property valued at more than $200 but not more than $500, which is a gross misdemeanor.

## ISSUE

Is appellant entitled to a new trial because the district court failed to follow the dual representation procedures set out in Minn. R.Crim. P. 17.03, subd. 5, and because the state failed to demonstrate beyond a reasonable doubt that no prejudicial conflict of interest existed?

## ANALYSIS

In Minnesota, an "affirmative-inquiry" approach is required to determine whether jointly represented co-defendants voluntarily consented to the joint representation. *Mercer v. State,* 290 N.W.2d 623, 625 (Minn.1980); *see* Minn. R.Crim. P. 17.03, subd. 5 (setting out procedure to be followed before allowing dual representation). In such an inquiry, the district court must elicit narrative responses from each defendant concerning his or her understanding of the conflict of interest. *State v. Olsen,* 258 N.W.2d 898, 906–07 (Minn.1977). If the court meets this obligation and the defendant nonetheless insists on the joint representation, the defendant bears the burden of demonstrating

that an improper prejudicial conflict existed. *Id.* If, however, the court fails to so advise the defendant, the state must demonstrate beyond a reasonable doubt that no improper prejudicial conflict existed. *Id.*

Here, the district court failed to conduct the inquiry and relied solely on defense counsel's own questioning of his clients. In addition, counsel addressed the defendants simultaneously, rather than separately. Finally, rather than questioning the defendants about their understanding of the potential problems with joint representation so as to elicit a narrative response, counsel asked leading questions that required only a yes or no response. We therefore conclude that the colloquy between counsel and defendants failed to comply with the "affirmative-inquiry" mandated by *Olsen* or by rule 17.03, subd. 5. While this error does not automatically entitle a defendant to a new trial, the burden shifts to the state to demonstrate beyond a reasonable doubt that no prejudicial conflict of interest existed. *Olsen,* 258 N.W.2d at 907–08 (citing *Lollar v. United States,* 376 F.2d 243 (C.A.D.C.1976)).

An attorney representing two defendants may be faced with possible conflicts of interest in cases involving "inconsistent pleas, factually inconsistent alibis, conflicts in testimony, differences in degree of involvement in the crime, tactical admission of evidence, the calling and cross-examination and impeachment of witnesses, or [dif-

---

1. We note that appellant argues that he cannot be convicted of aiding and abetting felony check forgery because Dawn Walker did not sign a fictitious name and had authority to sign her name to Kodiak's checks. The statutory crime of check forgery was enacted in 1987 and makes it a crime for a person to "falsely make[ ] ... a check so that it purports to have been made ... by the authority of one who did not give authority." Minn.Stat.

§ 609.631, subd. 2 (2002); 1987 Minn. Laws ch. 329, § 13. Under this statute, a defendant may commit the crime of check forgery if it is established that he has possession of an instrument that is valid in all respects, he has explicit instructions as to when or how the instrument is to be used, and he violates that authority. Thus, a person need not sign a fictitious name in order to be guilty of check forgery.

fering] strateg[ies] in final summation." *Olsen*, 258 N.W.2d at 905 (footnotes omitted). The possibility of "guilt by association" may also present a conflict of interest for an attorney representing two defendants simultaneously. *Id.*

In *Lollar*, the court held that "only where we can find no basis in the record for an informed speculation that appellant's rights were prejudicially affected, can the conviction stand." *Id.*, 376 F.2d at 247 (quotation omitted). The court determined that the government failed to meet its burden when the "indicators of prejudice" were "troublesome enough to lead to an informed speculation that [the defendant] may have been actually prejudiced." *Id.* (quotation omitted).

From the facts presented here, defense counsel could have argued that appellant was an unknowing participant who merely endorsed checks made out to him for his work as a subcontractor. While a unified defense might have been an intended trial tactic, it is just as likely that counsel was precluded from arguing that appellant was an unknowing participant in Dawn Walker's scheme because of his professional obligation to her. Indeed, the facts here easily could have supported differing defenses or arguments challenging the sufficiency of the evidence against each defendant, because appellant arguably was less involved in the forgery of checks and Dawn Walker was less involved in the theft of movable property.

In a case involving liability by aiding and abetting, the lack of differentiation between the defendants becomes even more pronounced. A person can be criminally liable for aiding and abetting if he or she played a knowing role in the crime; inaction, knowledge, or passive acquiescence, however, does not rise to the level of criminal culpability. *State v. Matelski*, 622 N.W.2d 826, 831 (Minn.App.2001), *re-view denied* (Minn. May 15, 2001). Dual representation of co-defendants charged with aiding and abetting is particularly troublesome, given defense counsel's inability to vigorously cross-examine co-defendants or to raise doubts about the lack of involvement by one co-defendant at the other's expense.

Defense counsel's representation of both appellant and Dawn Walker was further compromised by the manner in which the evidence was presented here and by the prosecutor's closing arguments. The evidence and the charges against the Walkers were not clearly separated. The prosecutor was able to capitalize on the lack of differentiation between the co-defendants by arguing that the couples' guilt was a "package deal" because they were married and had an interest in protecting each other. Specifically, the prosecutor argued that Dawn Walker's testimony was a "convenient explanation to explain away the criminal acts perpetrated by the Walkers" and that the jury had to choose between the Walkers' word and Morgan's word. The prosecutor further argued that appellant and Dawn Walker had an interest in protecting themselves and each other because of their marital relationship. Finally, the prosecutor argued that appellant and Dawn Walker were engaged in an "ongoing pattern of deception, an ongoing pattern of betrayal, an ongoing pattern of theft, [and] an ongoing pattern of check forgery." While the prosecutor's arguments may have been properly based on the evidence, those arguments further illuminate the problems inherent with one attorney representing two defendants whose testimony may not conflict but whose involvement in a crime differs factually.

■■ The potential for prejudice here was further exacerbated by lack of clear instructions cautioning the jury to separate

the evidence and charges against appellant and Dawn Walker. While a district court has discretion to join codefendants for trial, in order to minimize prejudice the court must instruct the jury, both at the time the evidence is offered and again at the close of the case, that the evidence against each co-defendant should be considered separately. *See State v. DeVerney,* 592 N.W.2d 837, 842 (Minn.1999); *State v. Greenleaf,* 591 N.W.2d 488, 499 (Minn. 1999) (finding no prejudice when court instructed jury at beginning and at end of trial that cases against co-defendants were to be considered separately); *see also State v. Kates,* 610 N.W.2d 629, 631 n. 4 (Minn.2000) (setting out new cautionary instruction to be given whenever separate offenses are jointed for trial). The district court here, although giving a cautionary instruction, did not give the instruction recommended in *Kates.* Granted, the jury instructions and the separate verdict forms here tended to force the jury to consider the charges against appellant and his co-defendant wife separately; nevertheless, the manner in which the evidence was presented and the lack of complete instructions both before and after the presentation of that evidence further adds to the possibility of prejudice.

The state asserts that the evidence fails to support appellant's claim that he was less culpable and that dual representation may have benefited appellant. *See Lundin v. State,* 430 N.W.2d 675, 678 (Minn. App.1988), *review denied* (Minn. Dec. 21, 1988). While this may be true, our review of the record here leaves us with an "informed speculation" that appellant may have been actually prejudiced. *See Lollar,* 376 F.2d at 247. Given this possibility, we conclude that appellant is entitled to a new trial.

### DECISION

Because the district court failed to individually question appellant and his co-defendant wife regarding their decision to allow appellant's attorney to jointly represent them and because the state has failed to show beyond a reasonable doubt that no prejudice resulted from this joint representation, we reverse and remand for a new trial. Given our decision to grant appellant a new trial, we need not address any remaining issues raised by appellant in his brief or pro se supplemental brief.

**Reversed and remanded.**