No. 25.—DANIEL S. McCOY, plaintiff in error, *vs.* THE STATE, OF GEORGIA, defendant in error.

[1.] A motion for a verdict in his favor, by a defendant, in such a case as this, is not allowable, if it is allowable in any case.

[2.] If the charge or decision excepted to, is more favorable to the party excepting than the law warrants, the exception will be over-ruled, even if the charge or decision be erroneous.

[3.] That a Court refuses to charge the Jury upon a point, in reference to which there is no evidence, is no ground of error.

[4.] [5.] Nor is it a ground of error that a Court decides wrong, with respect to an immaterial matter.

Larceny, after trust reposed. Tried before Judge POWERS, in Bibb Superior Court, November Term, 1853.

· ‘The indictment in this case, charged that the defendant, on 1st September, 1853, was intrusted, by Davis Smith, Jr. with a certain bay horse, for the purpose of selling and paying over the proceeds to Smith; that the defendant disposed of the horse for $96, and fraudulently converted the money to his own use, "the said Daniel S. McCoy not having paid to the said Davis Smith, Jr. the full value of the horse aforesaid, contrary to the laws, &c."

· On the trial, counsel for defendant moved the Court for a verdict of "Not Guilty", on the ground that no crime was charged in the indictment—the allegation being that the defendant had failed to account for the full market value of the horse, and not for the proceeds of the sale. And because, the averment that he had failed to pay the full market value, was negative pregnant; and that the legal intendment therefrom, was that he had accounted for the proceeds of the sale ; and that the State could not, by its proof, contradict that intend-ment.

·The Court over-ruled the motion, and defendant excepted.

The State proceeded to introduce evidence, in support of the indictment, which it is unnecessary, here, to recapitulate.

It appeared that McCoy had left the State and was followed to Kentucky, where two suits were instituted against him, by one Babcock, for himself and others. The written settlement of those suits was placed in evidence by the defendant. On his return from Kentucky, a demand was made upon him for the horse, in Bibb county.

The Court charged the Jury, amongst other things, that if they should be satisfied, from the evidence, that the horse was placed in the hands of defendant, by Smith or his agent, for sale, on account of Smith, and defendant, in pursuance thereof, sold the horse, but converted the proceeds to his own use; and on demand of Smith, failed and refused to account for the proceeds of sale, or the full value of the horse, after the conversion of the proceeds to his own use, then he was guilty. The offence became complete, when he refused to respond for the

McCoy *vs.* The State.

value of the horse. It was his duty to retain the proceeds of the sale and turn them over to his principal. If, however, he converted them to his own use, the law did not regard him as a criminal, if he paid the value of the horse, on demand, after this conversion. Before conversion, he was only bound to pay what he received; after conversion, he was bound for the value of the horse, irrespective of the actual amount received. As to the settlement set up in defence, if the Jury believed that there were other matters in controversy between the parties, which were settled by the agreement in Kentucky, and the claim of the horse was not included in the settlement, of course that settlement would be no defence here. And if the Jury believed, from the evidence, that the value of the horse was demanded here, on defendant's return to Macon, it was a sufficient demand.

To all of which charge, defendant excepted.

1st. That the Court erred in charging that defendant was guilty, if he failed to account for the full market value of the horse.

2nd. In not charging, when speaking of the settlement in Kentucky, that if a demand was there made, the offence was then complete.

3rd. In charging as to a demand in Bibb county, when there was no evidence on that point.

4th. In charging that a demand for the full market value, and not the proceeds, was necessary.

On these several exceptions, error has been assigned.

STUBBS & HILL—HALL & CAREY, for plaintiff in error.

Sol. Gen'l DEGRAFFENREID, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The indictment, in this case, was founded on the thirty-sixth section of the sixth division of the penal code.

That section declares, among other things, that " if any per-

son who has been intrusted by another with ' any' ' horse', for the purpose of selling such ' horse', and paying over the proceeds of such sale to the owner or other person so intrusting or delivering the said" horse, " shall fraudulently convert the said" horse, " or the money or other thing arising from the sale" of " said horse", to his or her own use, "or shall otherwise dispose of" said horse, " to the injury, and without the consent of the owner or other person so intrusting or delivering" said horse, " and without paying to such owner or person intrusting or delivering the same the full value or market price thereof, such person, so offending, shall, on conviction, be punished by imprisonment and labor in the penitentiary, for any time not less than one year, nor longer than five".

These words make two kinds of acts criminal—First, that in which the party *fraudulently converts* the article *to his own use.* Second, that in which he *otherwise disposes of the article, but to the injury of the owner, and without his consent, and without paying him the full value or market price of the article.* In the first kind, the crime is complete, as soon as the party fraudulently converts the article to his own use. Nothing more need happen. It is not necessary that he should also fail to pay the owner the full value or market price of the article.

In the second class, in which the article is disposed of otherwise than to the use of the party himself, the crime is not made complete by the mere disposing of the article. To make it complete, three other things must also exist—an injury to the owner—the non-consent of the owner—a failure to pay the owner the full value or market price of the thing disposed of.

This being the law, the indictment charged, that McCoy being intrusted by Smith, with a horse, for the purpose of selling the horse and paying over the proceeds of the sale to Smith, sold the horse for $96, and fraudulently converted the money to his own use. And after doing this, the indictment adds that the matter charged was to the injury of Smith, and was without his consent, and that McCoy had not paid him the full value of the horse.

The trial coming on, under this charge, the State proved by Smith, that McCoy got the horse, and got him for hauling off buggies with, to sell; and that as he, Smith, thought McCoy also had instructions to sell the horse, that Smith had made no demand of McCoy, for the money for which the horse sold.

This proof having been introduced, the defendant moved for a verdict of not guilty, on two grounds: First, that the defendant, if liable at all, "was only liable for the proceeds of the sale of the horse"; whereas, "he was charged with having failed to pay to the said Davis Smith, Jr., the full market value of the horse"; and the failure to pay that, and not the failure to pay the proceeds of the sale, was all that could be proved. Second, that the averment, that "McCoy had failed to pay the full value of the horse, was a negative pregnant"; and that the affirmation with which it was pregnant, was, by legal intendment, this, viz: that he had accounted for the proceeds of the sale; and that this being the legal intendment, it could not be contradicted by proof.

[1.] This motion the Court over-ruled. Was it right in doing so? It was.

As to the first ground of the motion—that was not true, in point of fact. It is not true, that the indictment *charges* McCoy with having failed to pay Smith the full market value of the horse. What is true, is that it *charges* him with having fraudulently converted the proceeds of the sale to his own use. This is the charge; and the statement in the indictment made after this charge, is stated that McCoy had not paid Smith the full value of the horse; is made as an incident of this charge, and not as, in itself, an independent charge.

As to the second ground. This, as taken, is also not true, in point of fact. If the statement, that McCoy had failed to pay the full value of the horse be a negative pregnant, with any affirmation at all, the affirmation with which it is pregnant, is not the one insisted upon by the defendant, viz: that he, McCoy, had *not failed* to pay, i. e. had paid the *proceeds of the sale* to the owner; but this, viz: that he, McCoy had *not*

*failed* to pay, i. e. had paid to the owner, *a value* for the *horse*, but not the "full value".

If this ground were good in point of fact, it would be bad in point of law. "The only way of objecting to a negative pregnant, is by special demurrer. It is aided by a general demurrer, or by pleading over". (*Arch. Pl.* 214.)

"All exceptions which go merely to the form of an indictment, shall be made before trial; and no motion in arrest of judgment shall be sustained, for any matter not affecting the real merits of the offence, charged in such indictment". *The Code*—(*Pr. Dig.* 658.)

And the affirmation with which this negative is, in fact, pregnant, if it be pregnant with any, is one which is immaterial.—The indictment is for the conversion of the *proceeds* of the *sale* of the horse—the negative pregnant is that the full value of the horse, (not the proceeds of the sale,) was not paid over; and the affirmation with which this negative is pregnant, if pregnant with any, is that a *part* of the *value* was paid over. But if the *whole*—the *full* value had been paid over, that would not discharge the *offence charged*. This we have seen, in considering the section of the Code, on which the indictment is founded. The statements in the latter part of the indictment, which follow the charge of a *fraudulent conversion* of the *proceeds* of the sale of the horse *to the use of the accused*, are mere surplusage. And "surplusage shall never make the plea vicious, but where it is contrarient to the matter before". (2 *Coke. Litt.* 303, *b. x.*)

But can any grounds of any sort be sufficient to sustain such a motion as this—a motion to the Court to order the Jury to write a verdict of a particular form, in a criminal case, whether they will or not. I know of no law which authorizes any such motion. Suppose the Jury refuse to write a verdict, at the dictation of the Court, can the Court make them write it? And if it can and does, can it be said in that case, that the Jury were the judges of the Law and the fact?

The Court was right in over-ruling this motion.

The other exception, is to the charge of the Court to the Jury.  Several assignments of error are made upon the charge.

First, that the Court erred, in charging that the defendant was guilty, if he failed to account for the full market value of the horse.

This was not the whole charge of the Court, if it was any part of the charge.  The charge was, that if the defendant received the horse for sale, sold him, and converted the proceeds of sale to his own use, and on demand of Smith, failed and refused to account for the proceeds of sale; *or* the full value of the horse, after the conversion of the proceeds of sale, to his own use, then he was guilty.  And the Court adds, " the offence became complete, when he refused to respond for the value of the horse".  "It was his duty to retain the proceeds of the sale, and turn them over to his principal.  If, however, he converted them to his own use, *the law did not regard him as a criminal, if he paid the value of the horse, on demand, after this conversion*".

[2.]  The amount of all this is, that even if, as charged, the defendant had fraudulently converted the proceeds of the sale of the horse to his own use, he may still be *excused* for it, if, afterwards, he had paid over to the owner, the full value of the horse.  This was a charge more favorable to the defendant than any to which he was entitled.  The Law under which he was indicted, as we have seen, made him a *complete criminal*, the moment he converted the proceeds to his own use; and after that, *no act* of his, or of the person whom he had wronged, could excuse him from that complete crime—neither the payment over of the proceeds of sale, or the payment of the value of the horse, or the payment of any amount of money, or the doing of any other thing.  The most that any of these acts could have accomplished, would have been the compounding of a felony.

There is no ground for this assignment of error.

The second assignment upon the charge is, that the Court, when speaking of the settlement in Kentucky, did not tell the

Jury, that if a demand was there made, the offence was complete.

[3.] But there was no evidence of any demand having been made in Kentucky. Such a charge, therefore, could have applied to nothing in the case.

[4.] As to the third assignment of error on the charge, there was some evidence to justify what is complained of; but it is sufficient to say, that what is complained of, is immaterial. It concerned a demand for the *value* of the horse; and did not concern a conversion of the proceeds of the sale of the horse, which was the material thing, under the indictment, as it stood.

[5.] The fourth assignment on the charge, labors under the same objection as the third. The matter complained of is immaterial.

It was argued before this Court, that the indictment is not sustained by the evidence; that the indictment charges a fraudulent conversion of the *proceeds* of the sale of the horse; and the evidence is, that Little "made a demand on McCoy for the *horse*", (not the proceeds,) and " he said he would do what was *right*, if" Little "would"; that then, Little "told him if he would return one-half of what he had stolen from" them, " he might have the balance".

In noticing this argument, when announcing the judgment of the Court, I stated, that I rather thought it was well founded in fact; but that it could not be available to the defendant, in the shape in which the case stood before the Court; that the matter on which the argument rested, was matter with respect to which the Court below had made no decision; and was, therefore, matter which could not be noticed by the Supreme Court—confined, as that Court is, exclusively to a notice of decisions made by Courts below.

That, had there been a motion for a new trial, on the ground that the Jury found contrary to evidence, and had this been over-ruled, then the Supreme Court could act.

My opinion, in these respects, has undergone no change.

The decisions of the Court ought all to be affirmed.