### McINTYRE *v.* THE STATE.

No. 13399. SEPTEMBER 24, 1940. REHEARING DENIED OCTOBER 16, 1940.

*George G. Finch,* for plaintiff in error.

*Bond Almand, solicitor, John A. Boykin, solicitor-general,* and *J. W. LeCraw,* contra.

JENKINS, Justice. Only the constitutional questions relating to admissibility in evidence of articles introduced for the purpose of showing that the defendant was engaged in operating a lottery, which articles were taken from him and his automobile by State officers without a warrant, and the admissibility of oral testimony relating to such articles, require elaboration. It is alleged that all such evidence was illegal as in contravention of the Federal and State constitutions. The defendant contends that the admission of this evidence violated art. 1, sec. 1, par. 6, of the State constitution (Code, § 2-106), that "no person shall be compelled to give testimony tending in any manner to incriminate himself;" violated art. 1, sec. 1, par. 16, of the State constitution (Code, § 2-116), that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated;" and violated the "due process of law" provision in the 14th amendment of the United States constitution (Code, § 1-815).

■ As to any such violation of the State constitution, this court, in *Calhoun* v. *State,* 144 *Ga.* 679 (87 S. E. 893), by a unanimous decision held that, unless "the accused be compelled to produce the incriminating evidence, . . articles taken from the person or premises of the accused, tending to establish his guilt of the offense of which he is charged, are admissible in evidence against him, notwithstanding the articles were discovered by an unlawful search and seizure; and this rule of evidence is not violative of the constitutional prohibition of unreasonable searches and seizures." In that case it was further held that such evidence "is not inad-

missible as contravening the constitutional provision that 'No person shall be compelled to give testimony tending in any manner to criminate himself.'" This ruling was based upon decisions there cited, both of the Supreme Court of the United States and of this court. This case was followed in *Hysler* v. *State,* 148 *Ga.* 409 (96 S. E. 884) ; *Martin* v. *State,* 148 *Ga.* 406, 407 (96 S. E. 882) ; *Groce* v. *State,* 148 *Ga.* 520 (97 S. E. 525) ; *Johnson* v. *State,* 152 *Ga.* 271 (2) (109 S. E. 662) ; *Herndon* v. *State,* 178 *Ga.* 832 (3), 844 (174 S. E. 597). The United States Supreme Court, in Herndon *v.* Georgia, 295 U. S. 441 (55 Sup. Ct. 663, 79 L. ed. 1446), refused to review a direct appeal of the last decision. While in a later appeal of a habeas-corpus case involving the constitutionality of the *statute* under which the defendant in the last-mentioned case had been convicted, it was held that the statute violated the 14th amendment of the Federal constitution, there was no adjudication as to the rule of evidence. Herndon *v.* Lowry, 301 U. S. 242 (57 Sup. Ct. 732, 81 L. ed. 1066) ; *Lowry* v. *Herndon,* 182 *Ga.* 582 (186 S. E. 429). In *Kennemer* v. *State,* 154 *Ga.* 139 (113 S. E. 551), *Lester* v. *State,* 155 *Ga.* 882 (118 S. E. 674), and *Jackson* v. *State,* 156 *Ga.* 647 (2, 3) (119 S. E. 525), motions to review and overrule the earlier decisions were denied.

■ While it is argued by brief that the decisions of this court as to the admissibility of evidence, under the provisions of the State constitution against unreasonable searches and seizures and self-incrimination, are contrary to cases of the United States Supreme Court, construing similar provisions in the 4th and 5th amendments of the Federal constitution, no attack is made on the rule of evidence as violative of these amendments. It seems to be recognized by the Federal court, as repeatedly held by it, that the first eight amendments of the Federal constitution "are not concerned with State action, and deal only with Federal action," and that such an amendment "applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in State courts or the standards which must be applied concerning them," or the rules of evidence prescribed by the States and their courts. Minneapolis *v.* Bombolis, 241 U. S. 211 (36 Sup. Ct. 595, 60 L. ed. 961) ; Adams *v.* New York, 192 U. S. 585 (24 Sup. Ct. 372, 48 L. ed. 575) ; Twining *v.* New Jersey, 211 U. S. 78, 99, 107 (29 Sup. Ct. 14, 53 L. ed. 97) ; Weeks *v.* U.

S., 232 U. S. 383, 393, 398, supra). Accordingly, as was held in *Kennemer* v. *State,* supra, since "the provision [as to unreasonable searches and seizures] in the Federal constitution applies to, and is restrictive only of, national action," in that sphere "the construction put upon it by the Supreme Court of the United States is controlling and supreme; but 'it does not in any manner govern or regulate trials in criminal cases in State courts.' The provision in the State constitution is applicable alone to State action. Its construction by this court is controlling and supreme."

■ We turn now to the question whether the admission of the alleged lottery evidence violated the "due process of law" clause of the 14th Federal amendment. In Twining *v.* New Jersey, supra, the United States Supreme Court dealt with an alleged violation, not only of the exemption in the 5th Federal amendment against self-incrimination, but of the "due process" clause of the 14th Federal amendment. The court, recognizing that "by a long line of decisions the first ten amendments are not operative on the States," held that "the exemption from compulsory self-incrimination is not a privilege or immunity of national citizenship guaranteed by this clause of the 14th amendment against abridgment by the States;" and that the right claimed was not so "fundamental in due process that a refusal of the right is a denial of due process." Defining the term in its application to *trials,* the court said: "Due process requires that the court which assumes to determine the rights of the parties shall have jurisdiction, . . and that there shall be notice and opportunity for hearing given the parties. . . Subject to these two fundamental conditions, . . this court has up to this time sustained all State laws, statutory or judicially declared, regulating procedure, evidence, and methods of trial, and held them to be consistent with due process of law." In Adams *v.* New York, supra (192 U. S. 585, 594), which was itself a case relating to a seizure by State officers of lottery articles, and their admission in evidence in a State-court trial, while the court said, "We do not feel called upon to discuss the contention that the fourteenth amendment has made the provisions of the fourth and fifth amendments to the Constitution of the United States, so far as they relate to the right of the people to be secure against unreasonable searches and seizures and protect them against being compelled to testify in a criminal

case against themselves, privileges and immunities of citizens of the United States, of which they may not be deprived by the action of the States," since "An examination of this record convinces us that there has been no violation of these constitutional restrictions, either in an unreasonable search or seizure or in compelling the plaintiff in error to testify against himself," yet the Supreme Court of the United States went on to hold, that, with reference to these alleged rights themselves, the fact that papers which are pertinent to the issue may have been illegally taken from the possession of the party against whom they are offered is not a valid objection to their admissibility, that the court considers the competency of the evidence and not the method by which it was obtained, and that it is within the established power of a State to prescribe the evidence which is to be received in its own courts. In Palko *v.* Connecticut, supra, the court laid down, as a test whether the right in question comes within the purview of the 14th Federal amendment, that it must be of "the very essence of a scheme of ordered liberty"—a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Among the rights mentioned as thus included are "protection against torture, physical and mental," and protection from condemnation by a "sham" hearing or one without "the benefit of counsel," and without a "real trial." However, the court in that case disclaimed the existence of any general rule whereby the acts prohibited to the Federal government by the first eight amendments to the United States constitution are "now equally unlawful by force of the 14th amendment, if done by a State." Among other things mentioned as not prohibited to the States by the 14th Federal amendment are the right to trial only after an indictment, the right to trial by a jury, and "the immunity from *compulsory self-incrimination."*

There are also many decisions both by the Supreme Court of the United States and by the United States Circuit Courts of Appeals, involving trials in Federal courts, in which, although the 14th Federal amendment was not involved, the nature of the protection against unlawful searches and seizures and compulsory self-incrimination was considered and decided, and which seem clearly to recognize that such protection is not of "the very essence of a scheme of ordered liberty," or "a principle of justice so rooted

in the traditions and conscience of our people as to be ranked as fundamental," under the test stated in the Palko case, supra. While it is true that the Federal courts have applied in their own tribunals a rule, as to evidence obtained by Federal officers in violation of the 4th and 5th Federal amendments, different from that obtaining in this State with respect to evidence obtained by State officers and used in State-court trials, the Federal courts have nevertheless, even in cases tried in their own tribunals, consistently recognized that the Federal government may avail itself of evidence obtained by *State* officers, even though such evidence may have been obtained by unlawful search and seizure. These decisions draw the distinction, already stated, between the limitations of the 4th amendment in its different spheres of operation on the Federal government and the States. In Byars *v.* U. S., 273 U. S. 28, 33 (47 Sup. Ct. 248, 71 L. ed. 520), it was said: "We do not question the right of the Federal government to avail itself of evidence improperly seized by State officers operating entirely on their own account." In Gambino *v.* United States, 275 U. S. 310, 317 (48 Sup. Ct. 137, 72 L. ed. 293), it was said: "The conclusion here reached is not in conflict with any of the earlier decisions of this court in which evidence wrongfully obtained by persons other than Federal officers has been held admissible in prosecutions for Federal crimes. For in none of those cases did it appear that the search and seizure was made solely for the purpose of aiding the United States in the enforcement of its laws. In Weeks *v.* U. S., 232 U. S. 383 (34 Sup. Ct. 341, 58 L. ed. 652), the papers not ordered returned had been obtained by a policeman who searched the defendant's home after his arrest by another State officer. . . It was not shown that either the arrest or the search was made solely for the purpose of aiding in the prosecution of the Federal offense. A law of the State made criminal the acts with which the defendant was charged; and the seizure may have been made in enforcing the State law." See also Blaman *v.* U. S., 94 Fed. 2d, 197; Edgmon *v.* U. S., 87 Fed. 2d, 13; Rettich *v.* U. S., 84 Fed. 2d, 118; Ex parte Villarino, 50 Fed. 2d, 582, affirming 47 Fed. 2d, 912; Mabee *v.* U. S., 60 Fed. 2d, 209, affirming 53 Fed. 2d, 874; Kirkley *v.* U. S., 283 Fed. 34; Timonen *v.* U. S., 286 Fed. 935; Youngblood *v.* U. S., 266 Fed. 795; Epstein *v.* U. S., 284 Fed. 567.

The decisions of the Supreme Court of this State have uniformly held that the admission in evidence in a State court trial of articles taken from a defendant by a State officer without a search warrant does not contravene the "due process" clause of the 14th Federal amendment. In *Martin* v. *State,* supra, it was decided that "this rule of evidence is not violative of the . . due-process clauses of the State and Federal constitutions." Like rulings were made in *Hysler* v. *State, Groce* v. *State, and Johnson* v. *State,* cited above, where it was held that "the exemption from unreasonable searches and seizures, contained in the 4th amendment to the Federal constitution, is not . . an element of due process of law guaranteed by the 14th amendment against State action."

Counsel for the plaintiff in error appears to base his contentions that the admission in evidence of the articles taken by the State officers contravenes the 14th amendment, and that the decisions of this court are contrary to the decisions of the United States Supreme Court, on the recent case of Chambers v. Florida, 308 U. S. 541 (60 Sup. Ct. 127, 84 L. ed. 419). While the present case involved a misdemeanor, under a criminal statute against games of chance, the Chambers case involved a conviction of murder based upon an involuntary confession, the method of obtaining which and its use in evidence were held a violation of such essential procedural standards and fundamental safeguards of liberty as came within the protection of the "due process of law" guaranteed by the 14th Federal amendment. However, nothing was there said or indicated contrary to the earlier holdings of that court with reference to the questions here involved. On the contrary, that decision followed a like holding in Brown v. Mississippi, 297 U. S. 278 (56 Sup. Ct. 461, 80 L. ed. 682), which also involved a conviction of murder based solely on a confession obtained by torture; and while it was held in the Brown case that the "wrong [was] so fundamental that it made the whole proceeding a mere pretense of a trial, and rendered the conviction and trial wholly void" under the 14th amendment, it was also conceded that, so far as controlled by that amendment, a State could even withdraw "the privilege against self-incrimination, [put] the accused upon the stand as a witness for the State," citing Snyder v. Mass., 291 U. S. 97, 105 (54 Sup. Ct. 330, 78 L. ed. 664, 90 A. L. R. 575), and could "dispense with a jury trial," citing also Walker v.

Sauvinet, 92 U. S. 90 (23 L. ed. 678), and Hurtado v. California, supra (110 U. S. 516). But, as the court further said, "compulsion by torture to extort a confession is a different matter, . . and because a State may dispense with a jury trial it does not follow that it may substitute trial by ordeal." It was, however, conceded that "the State is free to regulate the procedure of its own courts in accordance with its own conceptions of policy, unless in so doing it 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,'" citing cases above stated and Rogers v. Peck, 199 U. S. 425, 434 (26 Sup. Ct. 87, 50 L. ed. 256).

Accordingly, irrespective of the correctness or incorrectness of the questioned rule of evidence as held in cases of this court based upon earlier decisions both of the United States Supreme Court and this court, or the rule as held in other cases of the United States Supreme Court with regard to the admissibility of such evidence when obtained by *Federal* officers and offered in *Federal* trials, under no view would such a rule of evidence and procedure in a State court constitute a violation of the "due process" afforded by the 14th Federal amendment.

*Judgment affirmed. All the Justices concur.*