James **BURSTON**, Petitioner-Appellee,

v.

E. B. **CALDWELL**, Warden, Georgia State Prison, Respondent-Appellant.

No. 73–3811.

United States Court of Appeals, Fifth Circuit.

Jan. 6, 1975.

Thornberry, Circuit Judge, concurred in part and dissented in part, with opinion.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The respondent State of Georgia prison official appeals from an order of the district court granting habeas corpus relief as to two of three convictions and sentences imposed on James Burston in 1935 under two indictments, the first charging robbery and assault with intent to rob, and the second charging armed robbery. The district court held that petitioner was denied his right to the effective assistance of counsel on the robbery count of the first indictment and as to the single armed robbery count of the second indictment. Our review of the record convinces us that the district judge was clearly erroneous in several conclusions he drew from the 1935 court records before him and erroneously applied 1974's more advanced standards in assessing as incompetent appointed counsel's performance in 1935. Accordingly, we reverse.

Two indictments were returned against petitioner in 1935. The first indictment, involving two incidents, both on March 23, 1935, charged petitioner and two co-defendants in Count One with robbery and in Count Two with assault with intent to rob.[1] The second indictment charged petitioner and three co-defendants with armed robbery.[2] Petitioner was convicted on both counts of the first indictment and received sentences of twelve to twenty years on Count One and three to four years on Count Two, to run consecutively. He was convicted of armed robbery under the second indictment and sentenced to serve twenty years following the sentences imposed under the first indictment.

Petitioner, after serving twenty months of his sentence, escaped and was not remitted to Georgia prison until 1971, thirty-four years later. Soon

Arthur K. Bolton, Atty. Gen., Daniel I. Macintyre, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant.

Wayne S. Hyatt, Atlanta, Ga. (Court-appointed), for petitioner-appellee.

---

1. John Wilson, James Burston and Willie High were charged in Count One with robbing William Tucker of clothes and $2.25. Count Two charged these three persons with assault upon A. K. Stovall with intent to rob him.

2. Clarence Armstrong, Lillian Askew, James Burston and Willie High were accused of armed robbery of Odel Walker of $4.30 on April 1, 1935.

thereafter he filed a petition for habeas corpus in a Georgia state court. That court's denial of relief was affirmed by the Supreme Court of Georgia. Burston v. Caldwell, 1972, 228 Ga. 795, 187 S.E. 2d 900. Petitioner thereupon filed a habeas corpus petition in federal district court, which denied relief on the basis of the state court hearing. Because factual disputes had not been adequately resolved in the state court proceeding we reversed and remanded for a more complete hearing. Burston v. Caldwell, 5 Cir. 1973, 477 F.2d 996.

On remand, the district court conducted an extensive evidentiary hearing, as complete as the exigencies permitted. The lapse of time between trials and this hearing presented difficulties. Complete transcripts of the 1935 trials were not available. Witnesses, co-defendants, police officers, attorneys and one judge had died. The second judge was too ill to testify and, in any event, had no memory of these distant events. The testimony of the petitioner and of one court reporter, briefs of the evidence,[3] and the certified court records of the indictments and sentences constituted the only evidence offered in support of and in opposition to petitioner's claim.

Petitioner contended in the court below that he was not afforded counsel in the 1935 proceedings, but alternatively, if the court should decide from the evidence before it that he had been, then that such representation was constitu-

tionally deficient.[4] The district judge, relying solely on the documentary evidence before it, found that Burston was represented by counsel but that his attorneys rendered ineffective assistance as to two of the charges.

Our analysis begins with a brief reference to the district judge's decision not to rely on petitioner's testimony:

> The only living witness to the trial (except one court reporter) is the petitioner himself who professes not to remember one trial at all and much of his testimony as to the other trial is contradictory. This Court's findings therefore must be made on the basis of records which are now available. Appendix at 161 (footnote omitted).

We agree that petitioner's testimony was either unsupported by other than his own bare assertions or contradicted by the record in too many instances to justify any reliance on it. The district court, of course, was not required to accept his testimony, even if uncontradicted. See Goodwin v. Smith, 5 Cir. 1971, 439 F.2d 1180, 1182; Tyler v. Beto, 5 Cir. 1968, 391 F.2d 993, cert. denied, 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574.

Although the district court based its decision solely upon the documentary evidence submitted, the "clearly erroneous" rule still applies. See Sicula Oceanica, S.A. v. Wilmar Marine Eng. & Sales Corp., 5 Cir. 1969, 413 F.2d 1332, 1333. But the respondent-appellant's

---

3. According to the testimony of the court reporter who transcribed at one of petitioner's trials, full transcripts were not prepared in Georgia in 1935 unless specifically requested by an attorney. As an economy measure, attorneys would ordinarily have the court reporter prepare a brief of evidence, which is an abstract of the testimony written in narrative form, which was used in the event of appeal. This saved the cost of typing up the transcript in question and answer form and the attorney's time in preparing a narrative from the transcript.

4. In his petition before the district court, Burston alleged that he was not formally arraigned, there was no preliminary hearing and charges against him were never explained, the grand and traverse juries were inher-

ently discriminatory, he was not advised of his right to counsel and was denied the effective assistance of counsel, he was denied the right to trial by jury and of his right to have witnesses appear in his defense, and he was not advised of his right to appeal. His testimony, which comprised the only evidence he offered to support his claims, narrowed his challenge to that of lack of counsel or denial of the effective assistance of counsel.

Petitioner's seemingly contradictory stance —that he was without counsel but, in the alternative, his counsel was ineffective—is a recognition that attorneys did in fact appear in court. The question before the court below was whether these attorneys appeared as petitioner's counsel or, as petitioner contended, on behalf of his co-defendants only.

burden under Fed.R.Civ.P. 52(a) is less onerous in this situation. Id.

The Sicula Oceanica case teaches that it is our duty, when these cases are presented for review, to study the entire record thoroughly and to determine whether we are "left with the definite and firm conviction that a mistake has been committed." See United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766.

Volkswagen of America, Inc. v. Jahre, 5 Cir. 1973, 472 F.2d 557, 559.

■ The district court determined that petitioner was represented by counsel, a finding with ample support in the record. The pleadings show that attorneys Markeles and Lee appeared for petitioner in his first trial, and attorneys Charles and Harry Markeles appeared in the second trial. The briefs of evidence demonstrate this by showing trial counsel bringing out the inability of one victim to identify petitioner, instructing petitioner to take the witness stand, and objecting to statements on petitioner's behalf. The sole issue remaining, then, is the adequacy of that representation.

■ The first trial, involving two separate incidents, was for robbery and assault with intent to rob. Each was committed by three males, one of whom was holding a medium calibre hand gun. Both occurred the same evening and within half a mile of each other. The victim of the assault identified Burston and his two co-defendants. The victim of the completed robbery identified only the two co-defendants and specifically stated that he could not tell whether Burston was the third participant. Burston's counsel, despite this evidence developed at trial, did not move for a directed verdict of acquittal.

The district judge concluded that, because there was no eyewitness identification of Burston by the robbery victim, no evidence connected petitioner with the crime. Therefore, his attorneys should have moved for a directed verdict of acquittal and the failure to do so rendered their assistance constitutionally ineffective. However, the district court also found, and the record amply supports this determination, that as to the second count and the remainder of the trial of Count One, counsel did protect petitioner's interests. Failure to move for a directed verdict was the sole ground for finding in petitioner's favor as to this count.

The standard which this court has enunciated governing the conduct of counsel is

not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

MacKenna v. Ellis, 5 Cir. 1960, 280 F.2d 592, 599, cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78. Only the record can speak today for the attorneys whose representation is challenged. Accordingly, fair consideration must be given to the substantive and procedural law in effect in Georgia in 1935, which may help to explain actions taken by counsel which would be unacceptable under today's practices. We find that the tactical decisions made and actions taken by counsel in 1935, viewed in context, were reasonable and afforded petitioner that "reasonably effective assistance" to which he was entitled, conceding that such practices might well be unacceptable today because of changes in procedural and substantive law.

The district judge was in error on two grounds when he held that petitioner was denied the representation to which he was entitled on Count One of the first indictment. First, he neglected the evidence linking Burston to the crime. The record does not support his finding of "no evidence." The congruence of time, place, modus operandi, and identification of all three co-defendants by one victim and identification of two by the other victim are strong circumstances evidencing the participation and guilt of Burston.

Second, the district judge failed to give due consideration to the 1935 status of Georgia law governing the granting

of motions for directed verdicts of acquittal. Until 1965, there was no Georgia statutory authority for the granting of such motions in criminal cases. See Sutton v. State, 1967, 223 Ga. 313, 154 S.E.2d 578; but *see* Pritchard v. State, 1968, 224 Ga. 776, 164 S.E.2d 808 pointing out that *Sutton* was no longer controlling because the 1965 statutory authorization for the direction of verdicts in criminal cases was repealed by the Georgia legislature in the interim. See 110 Georgia Code Ann., Sec. 104, repealed 1966, 81A Georgia Code Ann., Sec. 201(bb). . Early cases registered disapproval of granting such motions. See McCoy v. State, 1853, 15 Ga. 205. It was believed that questions of the weight of the evidence were exclusively for the jury's consideration initially. See Manley v. State, 1928, 166 Ga. 563, 144 S.E. 170, rev'd on other grounds, 279 U.S. 1, 49 S.Ct. 215, 73 L.Ed. 575; Williams v. State, 1898, 105 Ga. 814, 32 S.E. 129.

In the 1898 *Williams* case, supra, however, the Georgia court did acknowledge, albeit with disapproval, that the "practice" of the trial judge passing on the evidence before submitting the case to the jury was developing in the trial courts. Two intermediate appellate decisions indicated that a trial judge could grant such a motion where there was *no* evidence of guilt. See Bell v. State, 1915, 15 Ga.App. 718, 84 S.E. 150; Nalley v. State, 1912, 11 Ga.App. 15, 74 S.E. 567. It was never considered error, however, for a trial judge to deny a motion for a directed verdict. *Sutton,* supra; Douberly v. State, 1937, 184 Ga. 577, 192 S.E. 226; *Manley,* supra; Byrd v. State, 1928, 38 Ga.App. 682, 145 S.E. 478; *Bell,* supra.

The strong policy in favor of submitting the case to the jury if there was any evidence of guilt and the fact that it was never error for a trial court to deny such a motion lead us to conclude that the district judge's finding of ineffective assistance of counsel on this ground was erroneous. The failure of petitioner's counsel to move for a directed verdict did not render their assistance ineffective where there was possibly sufficient evidence of guilt to support a guilty verdict and no reason to believe that such a motion would be granted. Petitioner urges that, even if the motion would probably have been to no avail, it should have been made because it could have been made. We are unwilling to impose such a standard upon counsel. If failure to move for a directed verdict in the circumstances indicated here was error, we find it to be harmless beyond a reasonable doubt. As to this count, petitioner had the reasonably effective assistance to which he was entitled.

■ The district judge further found that four acts (or failures to act) of counsel at the second trial required a finding of ineffectiveness. We will address each separately, but begin with a brief reference to the controlling legal principles. The Constitution guarantees petitioner that his counsel at the second trial rendered and was reasonably likely to render reasonably effective assistance. MacKenna v. Ellis, supra, 280 F. 2d at 599. A defendant is, of course, not entitled to errorless counsel. We must bear in mind that trial counsel are dead; only the record speaks for their actions. Decisions which today might indicate ineffectiveness may be reasonable if attention is paid to the law of 1935. Further,

> The petitioner in a habeas corpus proceeding has the burden of proof to *establish* sufficient facts to warrant a finding of denial of constitutional rights.

Tyler v. Beto, supra, 391 F.2d at 995. Petitioner did not meet this burden.

■ Petitioner's second trial was for armed robbery. He was indicted with Clarence Armstrong, Lillian Askew, and Willie High. On the back of the indictment, however, two separate verdicts appear, both dated the same day: a verdict of guilty was entered as to Burston, Askew and High, signed by the foreman of the jury sitting on the case; above it, a not guilty verdict was entered as to Armstrong, signed by the same jury

foreman. The brief of evidence indicates that Armstrong was not tried with the other three since there is no testimony bearing upon his guilt and he made no statement on his own behalf, as did each of the other three defendants. A remark by petitioner's counsel referred to "the Clarence Armstrong case."

Petitioner argued, and the district court so found, that Armstrong hired an attorney [5] who severed his case, tried it first and obtained a not guilty verdict, and later that day represented Burston, Askew and High before the same jury.

Petitioner contended that the attorney subordinated his interests to those of Armstrong and that this conflict of interest required the setting aside of his conviction. The State of Georgia challenges this reading of the record as being without any evidentiary support. It argues that a more reasonable reading of the record suggests that the prosecution, realizing it could not produce enough evidence to convict Armstrong, decided not to put him on trial; and the foreman of the jury sitting on the case of the other three was directed to sign the not guilty verdict on the back of the indictment.

While the district judge did not make any finding as to the existence of a conflict of interest between Armstrong and petitioner, it appears to us that his reading of the record influenced his determination that the assistance of Burston's counsel was ineffective.

The district judge was "clearly erroneous" in finding that a severance and two trials before the same jury took place. The evidence is insufficient to support this reading of the record. Nothing in the record supports a conclusion that Armstrong hired the attorney. The fact that attorney Markeles represented petitioner at his earlier trial suggests, rather, that Markeles appeared in the second case because of petitioner or co-defendant High, also a defendant in the earlier trial.

A more reasonable inference from a study of the record, as suggested by the respondent-appellant, is that Armstrong did not go to trial, and that the jury foreman signed the not guilty verdict at the direction of the trial judge. Both the guilty verdict as to Askew, Burston and Willie High and the not guilty Armstrong verdict are written out in longhand, apparently by different persons, as the handwriting differs considerably. Both verdicts are signed by the same name, "H. C. Yancey" in what appears to be the same handwriting. From the appearance of the body of the guilty verdict, Mr. Yancey was its scrivener.[6]

---

5. The district judge believed that Charles Markeles, the attorney who appeared for petitioner in both proceedings, was the lead attorney. Accordingly, we will refer to counsel in the singular although two attorneys appear of record.

6. Appended are facsimiles of the two verdicts:

We The Jury find the defendant Clarence Armstrong Not Guilty this May 16th 1935
H C Yancey
Foreman

We the jury find the defendants, Lillian Askew, James Burston, Willie High, Guilty and we fix their punishment at not less than twenty years and not more than twenty years This 16th day of May, 1935
H C Yancey
Foreman

Petitioner did not sustain his burden of proving that two trials before the same jury took place, with the attendant possibility that his attorney neglected his interests in favor of those of Armstrong.

The district judge's second ground for reversing the armed robbery conviction was that a conflict of interest existed between petitioner and co-defendant Lillian Askew, so that counsel was unable to represent both effectively. A brief summary of the testimony presented at trial will aid in understanding our disagreement with the district court.

The state's theory at trial was that Burston, Askew and High were joint participants in an armed robbery, during which the victim was stabbed. Lillian Askew admitted that she was present at the scene, but denied participating in the altercation which took place. Her testimony was to the effect that no robbery took place. She claimed that she was a prostitute who, after drinking with the victim at a dance, had been paid to accompany him. As they walked down a street, petitioner Burston ran up behind the victim and cut him with a knife.

Burston testified that he, the victim, and Askew had been drinking together at a dance, that after they left the dance together the victim accused him of stealing a quarter, and stuck him with an ice-pick, whereupon he stabbed the victim in self-defense. He stated that no robbery could have occurred because the victim had told him he had spent all except $1.-00 which he gave to Lillian Askew to sleep with him.

The testimony of the victim strongly challenged that of Askew and Burston. He identified all three defendants as participants and insisted that he had in fact been robbed. He denied being in the company of any of the defendants earlier in the evening, although he had seen them at a bar.

Finally, a detective testified that petitioner approached him prior to trial and "said he wanted to plead guilty for all of it, and take it on himself."

Petitioner contended below, and the district court agreed, that he was deprived of his constitutional right to the effective assistance of counsel because of a conflict of interest between him and co-defendant Askew, who tried to exculpate herself while implicating him. In context, the record does not support a finding of a divergence in interest between Askew and Burston and we reject the district judge's finding to this effect. The district judge failed to address the implications of Askew's statement in the light of 1935 Georgia law.

Under 1935 Georgia law, armed robbery was a felony which carried the possibility of the death penalty. Ga.Code Ann. Sec. 26–1701. Both Askew and Burston, therefore, were concerned with refuting the victim's testimony that a robbery had occurred. Burston, in addition, needed to establish that the stabbing, which was admitted, was an act of self-defense.

Both denied that a robbery occurred. It was not part of Askew's defense to blame Burston. She needed only to refute proof of her involvement and petitioner's testimony corroborated hers on this issue. Her testimony, while implicating petitioner in a misdemeanor crime, exonerated him from the capital felony for which he had been indicted. In addition to the testimony of the victim implicating Burston in a robbery, a police detective testified that Burston confessed earlier that day and wanted to plead guilty to "all of it". In such circumstances, it was reasonable trial strategy to focus the defense on reducing the crime charged from a capital felony to a misdemeanor. Had separate counsel been appointed, it is extremely likely that Burston's attorney would have called Askew as a witness to testify in Burston's defense.

The situation in the present case is distinguishable from those in White v.

United States, 5 Cir. 1968, 396 F.2d 822 and Sawyer v. Brough, 4 Cir. 1966, 358 F.2d 70, relied on by the district court, where classic conflicts of interest existed. In *Sawyer*, petitioner and a co-defendant were convicted of robbery. Sawyer denied his guilt. A confession of the co-defendant was admitted into evidence, however, which indirectly identified and incriminated Sawyer. We agree with the Fourth Circuit that

> An obvious divergence of interest exists between a defendant who denied his guilt and a codefendant who not only confesses his own complicity but also accuses the other of participation in the crime. . . . In such a situation the parties are placed in adversary and combative positions.

358 F.2d at 73. In *White*, one co-defendant made a statement exculpating himself while implicating the other. In our case however, both defendants exonerated Askew and both were concerned with proving that no money had been taken from the victim. Askew's testimony, exonerating petitioner of a capital offense, was crucial even though it implicated him in a misdemeanor charge. In these circumstances, petitioner has failed to establish that any conflict of interest existed or that he suffered any prejudice by virtue of the joint representation.

During the trial, a police officer testified that he went to Burston's house where he found bloody pants and a bloody knife. He did not testify that he had a search warrant and the facts did not indicate circumstances which would excuse the obtaining of a warrant. The district judge's third ground for finding inadequate representation was based on counsel's failure to object to the police officer's testimony because no basis for establishing the legality of the search and seizure was laid.

In so holding, the district judge erroneously assessed counsel's performance under modern standards. He overlooked the fact that in 1935 there was no federal exclusionary rule binding on the states which would require a court to keep out evidence even if illegally seized.[7] Neither would Georgia state law have authorized exclusion in such a situation. See McIntyre v. State, 1940, 190 Ga. 872, 11 S.E.2d 5, cert. denied, 312 U.S. 695, 61 S.Ct. 732, 85 L.Ed. 1130; Calhoun v. State, 1916, 144 Ga. 679, 87 S.E. 893. The only situation in which Georgia courts would exclude evidence seized illegally was if the defendant had been forced to produce it himself. Herndon v. State, 1934, 178 Ga. 832, 174 S.E. 597, rehearing denied, 179 Ga. 597, 176 S.E. 620, appeal dismissed, 295 U.S. 441, 55 S.Ct. 794, 79 L.Ed. 530. It follows that counsel did not render ineffective assistance by reason of his failure to object to testimony concerning the search and seizure involved. There was simply no basis in 1935 under state or federal decisions to believe that such a motion had the remotest chance of success. Rather, counsel had every reason to believe that offering such a motion would be no more than a futile gesture.

The final ground asserted by the district judge for finding counsel's representation ineffective was his waiver of authentication and proof of the chain of custody of the knife used in the stabbing. While on the stand, the police officer indicated that the knife, not then in his possession, was at his home. Later in the trial, petitioner's counsel waived recall of the police officer and identification of the knife, consenting to its introduction into evidence. The district judge felt that this cooperation in conjunction with the failure to challenge the search and seizure reflected a failure by counsel to protect petitioner's interests, of sufficient import to warrant setting aside Burston's conviction.

Because a challenge to the search and seizure would have been futile, no pur-

---

7. *Mapp*, making the exclusionary rule applicable to the states under the Fourteenth Amendment due process clause was decided years later. Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. *Mapp* is not to be given retrospective application. Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.

pose would have been served by forcing the prosecution to go through the steps for authentication. Several important factors influencing trial counsel were apparently overlooked by the court below. Burston admitted stabbing the victim and does not, even now, allege that the knife was not in fact his. The introduction of the knife was not a crucial or even a necessary part of the prosecution's proof. We find no indication from the record that the police officer was unavailable or was unable to properly identify it. In such circumstances, it was reasonable, and perhaps better trial strategy, for counsel to avoid drawing additional attention to the knife by insisting that the state go through the formal steps of proof. Counsel's failure to insist on proof of the chain of custody of the knife was no breach of counsel's duty to his client to render effective assistance.

In sum, we find adequate support in the record for the finding below that petitioner was represented by counsel in the 1935 proceedings. We do not, however, find support in the record for the finding that counsels' assistance was ineffective when considered in conjunction with procedural and substantive law as it existed in Georgia in 1935.

Reversed.

THORNBERRY, Circuit Judge (concurring and dissenting):

I concur in the majority's discussion and conclusions concerning appellee's first trial. I cannot agree, however, that Burston's attorney provided him reasonably effective assistance at his second trial. I do not believe that the district judge clearly erred in finding that Armstrong, represented by the same lawyer who represented Burston, was tried and found not guilty of the crime of which the same jury later that day found Burston guilty. The majority's argument on this point appears to be that Armstrong was granted something akin to a directed verdict of acquittal; this appears unlikely in light of Georgia law in 1935, as so ably elucidated in the majority opinion. Likewise, I remain unconvinced that Askew's testimony was intended to exculpate rather than inculpate Burston. Accordingly, I would affirm the district judge as to appellee's second trial.