Alexander JOHNSON, Petitioner,

v.

Jack K. REED, Superintendent, Mississippi State Penitentiary, Respondent.

No. GC 75–134–S.

United States District Court,
N. D. Mississippi,
Greenville Division.

Dec. 17, 1976.

Robert J. Kelly, Dodson, Kelly & Butts, Oxford, Miss., for plaintiff.

A. F. Summer, Atty. Gen., Timmie Hancock, Asst. Atty. Gen., Jackson, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

Petitioner Alexander Johnson is presently incarcerated in the Mississippi State Penitentiary at Parchman. Mr. Johnson is serving three sentences imposed upon him by the Circuit Court of Washington County, Mississippi. In two of the cases, Mr. Johnson was sentenced to a term of imprisonment for life. In the other case, he was sentenced to serve a term of 5 years.

Mr. Johnson filed with the court a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking relief from the sentences aforesaid. Mr. Johnson contends that the convictions upon which the sentences were imposed were obtained in violation of his federally protected rights.

The petition was accompanied by an application to proceed in forma pauperis. Mr. Johnson supported the application with an affidavit pursuant to 28 U.S.C. § 1915. The petition and application were referred to Hon. J. David Orlansky, the full-time magistrate of the court. Mr. Orlansky entered an order permitting Mr. Johnson to proceed in forma pauperis.

The Hon. A. F. Summers, Attorney General for the State of Mississippi, appeared on behalf of defendant Jack K. Reed, Superintendent of the state penitentiary, filed an answer and exhibited thereto a full and complete transcript of the court proceedings pertaining to the convictions and sentences in question.

Prior to his appointment as full-time magistrate and while serving as part-time magistrate, Mr. Orlansky was appointed by the state court to represent petitioner as an indigent defendant on the charges involved in the action sub judice. As will be hereinafter shown, Mr. Orlansky withdrew from the cases and another attorney was appointed to represent Mr. Johnson. Because of his prior connection with state cases, Mr. Orlansky recused himself in the action sub judice and it was placed on this court's trial docket.

A review of the file convinced the court that an evidentiary hearing was required to determine the issues presented by the petition. The hearing was scheduled and an attorney was appointed by the court to represent petitioner. The hearing has been held and the action is ripe for decision.

This memorandum of decision will contain the court's findings of facts and conclusions of law as required by Fed.R.Civ.P. 52(a).

Mr. Johnson was confined to the Washington County Jail on March 14, 1972, awaiting the action of the Grand Jury. On that date Mr. Orlansky was informed by the clerk of the court that he had been appointed to represent Mr. Johnson on the state charges mentioned above. Being otherwise engaged at the time, Mr. Orlansky did not go to the jail to interview Mr. Johnson until the next morning, March 15, 1972. At that time, and in the company of Hon. Robert C. Dean of his law firm Mr. Orlansky went to the jail and conducted an interview of Mr. Johnson. During the interview, which lasted approximately 1½ hours, Mr. Dean and Mr. Orlansky questioned Mr. Johnson in detail concerning the charges against him and concerning any potential witnesses known to him, either favorable or unfavorable to his defense. Mr. Johnson was generally responsive to the questions and Mr. Dean and Mr. Orlansky made extensive notes of the interview. During the interview it was developed that Mr. Johnson had made incriminating statements to investigating officers and he was advised by Mr. Dean and Mr. Orlansky of his constitutional right to remain silent and repeatedly cautioned against making any further statements to anyone other than his attorneys.

After talking with Mr. Johnson and considering the publicity given to the charges, Mr. Orlansky was convinced that a full defense of the charges against Mr. Johnson might ultimately involve a petition to the Supreme Court of the United States for a writ of certiorari, as well as federal post-conviction proceedings. Because the conflict of interest rules governing part-time magistrates prohibited him from engaging in the practice of criminal law in any federal court, including the Supreme Court of

the United States, Mr. Orlansky had some concern that he might not be in a position to afford Mr. Johnson with a full defense of the charges against him. Accordingly, he advised Mr. Johnson that he would withdraw as his attorney and obtained permission of the court to do so. The court then appointed Hon. J. Wesley Watkins, a prominent attorney at the Washington County Bar to succeed Mr. Orlansky as attorney for Mr. Johnson. Mr. Orlansky, being advised of the appointment, delivered to Mr. Watkins on March 22, 1976, all papers which he had acquired concerning Mr. Johnson's case, including the original interview notes prepared by him and Mr. Dean.

The deposition of Mr. Watkins, who now resides in Washington, D.C., was taken and submitted to the court at the evidentiary hearing. Mr. Watkins testified that he talked with Mr. Johnson on several different occasions after his appointment and prior to trial of the cases. On these occasions Mr. Watkins discussed in detail with Mr. Johnson the nature of the charges against him and felt that Mr. Johnson understood them. Potential witnesses were discussed on these occasions but Mr. Watkins was never furnished the names of any witnesses to subpoena for the trial. Mr. Watkins conferred at length with law enforcement officers and reviewed the state's file on the case. He was convinced that the state had a very strong case against his client. The details of the state's evidence in one of the cases was so horrendous that Mr. Watkins was convinced that if Mr. Johnson was convicted on that charge there was a probability that a death sentence would be imposed. Mr. Watkins discussed with Mr. Johnson the nature of the state's evidence; Mr. Johnson's right to a trial by jury; the right of cross-examination in the event of a trial; the right which Mr. Johnson had to remain silent at the trial; and the range of sentences available to the court in the event the jury should convict him. Mr. Johnson did not express any dissatisfaction with the representation which was being rendered by Mr. Watkins in his defense at any time during the course of the proceedings. Mr. Watkins obtained an agreement from the state prosecutors that charges of a similar nature in which Mr. Johnson was involved, then under investigation, would be dropped; that life sentences on each of the two rape charges and a five year sentence on the assault and battery with intent to kill charge would be recommended to the trial judge should Mr. Johnson elect to enter guilty pleas.

Mr. Johnson was advised of the agreement and consented to enter pleas of guilty. Mr. Johnson understood that the sentencing judge would not be bound by the agreement, and, if he elected to do so, could impanel a jury to determine the sentence to be imposed on each of the rape charges. Mr. Johnson elected to enter guilty pleas and take his chances with the sentencing judge rather than risk a death penalty at the hands of the jury.

Testifying in his own behalf at the hearing, Mr. Johnson stated that Mr. Watkins did not fully and adequately explain to him the nature of the charges; that he saw Mr. Watkins for only a few minutes on the two occasions when he was brought to the court for arraignment and sentence; and that he did not knowingly or voluntarily enter the guilty pleas. It is clear to the court, however, that Mr. Johnson was fully advised of the nature of the charges, the consequences of his pleas of guilty, and that the pleas were knowingly and voluntarily entered by him. Mr. Johnson's decision to plead guilty and take his chances before the sentencing judge rather than before the jury was induced in part, because of his fear that he would be convicted by the jury and a sentence of death would be inflicted. The pleas were also induced by the case which the state was able to make and by his own knowledge of guilt as expressed to his attorney and the court at the time of the change of pleas.

The record of the proceedings in the sentencing court shows that Mr. Johnson was arraigned on April 11, 1972. Mr. Watkins was with him at the time. At the arraignment the indictments were read to him and the nature of the charges explained. The record reflects that Mr. Johnson had been

previously furnished with copies of the indictments. Mr. Johnson entered a not guilty plea to each indictment and his attorney reserved the right to move for a special venire and to request a severance.

Mr. Johnson appeared before the sentencing judge 13 days later for change of pleas. The prosecuting attorney announced to the court that Mr. Johnson desired to change his pleas and that a life sentence on each of the two rape charges and a 5-year sentence of the charge of assault and battery with intent to kill were being recommended. After reviewing the nature of each charge with the prosecuting attorney in the presence of Mr. Johnson and his attorney, the sentencing judge informed Mr. Johnson of the rights afforded by a jury trial should he elect to stand trial rather than plead guilty.

Mr. Johnson informed the sentencing judge that he understood these rights and that he waived them by pleading guilty. The record reflects a colloquy between the court and Mr. Johnson just prior to the acceptance of the guilty plea as follows:

Q. Do you understand that by entering these guilty pleas you are giving up your right to have a jury trial in each of these cases? Do you understand that?

A. Yes.

Q. Do you understand that the court is not required to accept the recommendation of the State's Attorney and that on this charge of Assault and Battery with Intent to Kill, the court could sentence you to as much as ten years in the Mississippi State Penitentiary?

A. Yes, sir.

Q. And on the two rape charges, if the court saw fit, the court could empanel a jury to determine what the punishment would be; in other words, whether your punishment would be a life imprisonment or death by lethal gas? Do you understand that the court has the right to do that?

A. Yes, sir.

Q. Other than these recommendations that the State's Attorney has made to the court, that is, that you be given life sentences on the two rape charges and five years in the penitentiary on the assault and battery with intent to kill charge, have any promises, any hopes of reward, or anything like that been made to you to induce you to enter these pleas of guilty?

A. No sir.

Q. Have any threats, any force, any coercion, any intimidation, or anything of that nature been exerted against you to force or intimidate you into entering these pleas of guilty?

A. No.

Q. Are you then entering these pleas of guilty freely and voluntarily?

A. Yes.

Q. And do you understand what you are doing, you are pleading guilty to two charges of rape and one charge of assault and battery with intent to kill?

A. Yes.

Q. Are you in fact guilty of these three charges?

A. On two of them I am. I am guilty of two.

BY THE COURT: Well, I cannot accept a guilty plea on any charge if you tell me you are not guilty of it.

BY MR. WATKINS: May I have a moment with my client, if the court please?

BY THE COURT: All right.

(Mr. Watkins conferred with his client, Alexander Johnson, Jr., then both returned to the bench.)

BY MR. WATKINS: If the court please, Mr. Johnson didn't fully understand that the accessory to a crime theory makes him as guilty to that as the principal. I think he now understands.

BY THE COURT: (Resuming interrogation of the defendant)

Q. My question was: Are you in fact guilty of these three charges, two rape charges and a charge of assault and battery with intent to kill?

A. Yes, sir.

Mr. Watkins who was appointed to represent Mr. Johnson was a seasoned trial attorney. The record amply supports the proposition that he rendered Mr. Johnson

reasonably effective assistance during the entire proceedings. This is all that the law requires. The standard enunciated by the United States Court of Appeals for the Fifth Circuit and which is adopted by this court, is

> not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

*Burston v. Caldwell,* 506 F.2d 24, 27 (5th Cir. 1975), *quoting MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir. 1960), *cert. denied* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961) (emphasis in original).

■ The court finds that the assistance Mr. Watkins afforded Mr. Johnson was reasonably effective within the purview of the rule mentioned above and that Mr. Johnson has no legal right to complain.

■ The court further finds that Mr. Johnson's pleas of guilty were knowingly and voluntarily made. That he was influenced in his decision to change his pleas by the fact that a jury might inflict the death penalty should he stand trial, does not furnish legal grounds upon which a holding of involuntariness can be made. The Supreme Court has spoken quite emphatically on this point. Justice White, speaking for the court in *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 760 (1970) had this to say:

> The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:
>
> " '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business. (e. g. bribes)'. [*Shelton v. United States*] 242 F.2d 101 at page 115."

Under this standard, a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty.

The court holds that Mr. Johnson's Petition for the Writ of Habeas Corpus is not well taken and must be denied and dismissed.

An appropriate order is being entered by the court.