Richard C. LUNDIN,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C8–88–913.

Court of Appeals of Minnesota.

Oct. 25, 1988.
Review Denied Dec. 21, 1988.

William J. Mauzy, Douglas H. Olson, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas F. Pursell, Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered, and decided by FORSBERG, P.J., and RANDALL and NORTON, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from an order denying postconviction relief. We affirm.

## FACTS

Appellant, Richard C. Lundin, is the president of Lundin Construction Company. In the summer of 1984 the Minnesota Attorney General conducted an investigation into bid rigging on public road construction projects in southern Minnesota. The investigation led to the convening of a multi-county grand jury. In June 1984, appellant, Lundin Construction Co., and Larry Nurre, a Lundin employee in charge of preparing bids for submission to public contracting agencies, were subpoenaed to testify before the grand jury.

On the same day that the grand jury was convened, July 9, 1984, appellant, Lundin Construction Co., and Nurre all entered into pre-charging plea bargain negotiations with the attorney general's office. The same attorney represented all three defendants—appellant, the corporation, and Nurre—during these plea negotiations. In a plea agreement reached on July 10, 1984, appellant, Lundin Construction Co., and Nurre all agreed to cooperate with the attorney general's bid rigging investigation. In exchange, the attorney general agreed to recommend to the court acceptance of a guilty plea to one felony count of violating the Minnesota Anti–Trust Act, Minn.Stat. § 325D.53, subd. 1(1)(c) (1984), a criminal anti-trust offense. The attorney general also agreed to recommend that appellant receive the following sentence: a $5000 fine, a sentence of one year and one day, but stayed with straight probation (the Minnesota Sentencing Guidelines recommended sentence for this crime for a defendant with no criminal history score). The attorney general also promised immunity from criminal charges for any chargeable matters disclosed by appellant during the subsequent investigation. Appellant knowingly negotiated for and received this plea agreement.

Appellant testified before the grand jury on July 31, 1984. Prior to his testimony, appellant signed a waiver of rights and immunity form indicating that he understood his rights, including the right to counsel of his choice. On August 3, 1984, the grand jury indicted appellant and Nurre on two counts of conspiracy and bid rigging under the Minnesota Anti–Trust Act. After these indictments were handed down, appellant and Nurre were again read their rights under Minn.R.Crim.P. 5.01(b), such section informing appellant of his right to counsel.

On August 7, 1984, appellant, Lundin Construction Co., Nurre, et al., made their initial court appearance, and at this time entered pleas of guilty pursuant to the plea bargain. Prior to accepting appellant's plea of guilty, he was not specifically informed of his rights under Minn.R.Crim.P. 17.03, subd. 5. The record discloses no mention of any advisory to appellant of the dangers of dual representation, the possible attorney conflict of interest, and no specific representation was made to appellant of his right to conflict-free representation. Neither the defendant's mutual attorney, or the trial court, or the two prosecuting attorneys specifically warned appellant of the possible conflict of interest inherent in having one attorney represent three co-defendants.

Pursuant to the plea bargain, appellant, the corporation, and Nurre entered guilty pleas to the same single count of felony violation of Minn.Stat. § 325D.53, subd. 1(1)(c). The indictment specifically charged that:

> From on or about August 1, 1982 through on or about June 15, 1984, defendant, aiding, advising, counseling and conspiring with others, did willfully combine and conspire with other persons in competition to allocate or divide customers or markets for the sale of public road paving services: to wit, defendant, as an officer and agent of Lundin Construction Co., Inc. agreed with H.R. Loveall Construction Co., Inc., its officers and agents, to allocate public road paving contracts in Blue Earth County by fixing bids, controlling bids, or refraining from the submission of bids, one such bid letting occurring in Blue Earth County, the City of Mankato, on May 10, 1983.

During the taking of appellant's guilty plea, appellant testified that the Lundin Construction Company had been involved

in collusive bidding on public road construction projects. Appellant testified that Lundin corporation had reached an understanding with another corporation to allocate markets, and that this understanding was reached between August 1982 and June 1984. Appellant admitted that the corporation submitted a rigged bid on May 10, 1983. This bid was signed by Nurre, who appellant had hired to submit bids for the Lundin corporation. When asked whether he approved of Nurre's rigged bidding practices, appellant said, "yes." Appellant also admitted that he personally had signed other bids, knowing they were rigged, prior to the May 10, 1983, bid that formed the basis for the one guilty count.

Subsequently, the trial court judge accepted all three defendants' guilty pleas.

On October 9, 1984, appellant received his bargained-for sentence of one year and one day in prison, with the execution of the sentence stayed subject to his performance of certain conditions, including payment of a $5000 fine and some community service.

Appellant's sentence was satisfactorily served. Three years later, on October 8, 1987, appellant filed a motion to have his sentence modified. In the motion, appellant raised no complaint of ineffective assistance of counsel. The trial court denied the motion.

On January 25, 1988, appellant filed a petition for postconviction relief claiming there was no factual basis for his plea, and that he received ineffective assistance of counsel at the plea hearing and sentencing because of the conflict of interest due to his attorney representing himself, the corporation, and Nurre. On March 1, 1988, the trial court denied this petition. Appellant then filed a motion to reconsider the denial of his postconviction relief petition on April 22, 1988. This motion was denied April 25, 1988. Richard Lundin appeals from the original denial of postconviction relief and from the denial of the motion to have it reconsidered.

## ISSUES

1. Did the trial court err by denying appellant's petition for postconviction relief based on alleged ineffectiveness of counsel?

2. Did the trial court err by denying appellant's petition for postconviction relief based on his allegation that there was an inadequate factual basis for his guilty plea?

## ANALYSIS

### I.

### *Ineffective assistance of counsel*

■ Appellant contends that he was denied his right to effective counsel under the Minnesota Constitution because his attorney labored under a conflict of interest in representing him, Nurre, and Lundin Construction Company during plea negotiations and at the guilty plea hearing. Specifically, appellant argues that a conflict-free attorney would have minimized his guilt by drawing comparisons between his culpability and that of Nurre's, the person primarily responsible for preparing and signing the illegal bid. Appellant claims his attorney was precluded from doing so because of a conflict of interest.

In *State v. Olsen*, 258 N.W.2d 898 (Minn. 1977), the supreme court held that for trials where codefendants are represented by the same attorney, the trial court has an affirmative duty under Minn. Const. art. 1, § 6 *and* the sixth amendment to warn defendants of the potential dangers of multiple representation. *Id.* at 906–07. Moreover, the court should give the defendant an opportunity to question the court regarding the consequences of multiple representation, and that such an inquiry should be on the record. *Id.* at 907. The supreme court stated:

[w]hen satisfactory inquiry does not appear on the record, the burden shifts to the State to demonstrate beyond a reasonable doubt that a prejudicial conflict of interests did not exist.

*Id.* at 907–08; Minn.R.Crim.P. 17.03, subd. 5. Only where the court:

can find no basis in the record for an informed speculation that appellant's

rights were prejudicially affected can the conviction stand.

*Id.* at 908 n. 17 (quoting *Lollar v. United States,* 376 F.2d 243, 247 (D.C.Cir.1967)). It is clear that the trial court erred by not undertaking an affirmative *"Olsen* inquiry."

In *Mercer v. State,* 290 N.W.2d 623 (Minn.1980), the court held that the *Olsen* warning was required prior to the acceptance of a plea bargain. There, the court held that where an *Olsen* warning was not made, the state met its burden by showing that even if a defendant had different, conflict-free counsel, he would not have been accorded any more lenient treatment than the treatment he received. *Id.* at 626. There it was not error to deny defendant's postconviction relief petition where, first, the state had strong evidence of defendant's guilt and could have charged defendant with a more serious offense and, second, the state had no need for defendant's testimony against codefendants because evidence of their guilt was also strong. *Id.*

Here, as in *Mercer,* the state has solid evidence of appellant's guilt. Appellant admitted corporate and personal involvement in the collusive bid rigging process. The grand jury investigation indicates appellant could have been charged with more counts had there not been pre-charging plea negotiations. The state also had strong evidence of Nurre's guilt. We find no evidence in the record that appellant's plea bargain was in any way compromised. The plea bargain was beneficial to appellant, and it is pure speculation that appellant would have received even better treatment if he had retained a separate attorney for himself.

We also note that appellant waited nearly three years after his guilty plea was entered to complain of his attorney's conflict of interest. Appellant did not raise an ineffective assistance claim when he made an earlier motion to modify his sentence. This delay undermines his claim of real prejudice. Appellant received exactly what he bargained for. In fact, although our decision to affirm does not turn on this, appellant may have benefited from the dual representation. In *Holloway v. Arkansas,* 435 U.S. 475, 482–83, 98 S.Ct. 1173, 1177–78, 55 L.Ed.2d 426 (1978), the Supreme Court stated:

in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: "joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack."

(quoting *Glasser v. United States,* 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942)).

Even assuming that what appellant claims is true—that Nurre was more involved than he was—it is possible that if the parties had separate counsel, Nurre would have diminished his own guilt by "pointing the finger" at appellant, perhaps claiming that he was only doing his boss' bidding. By retaining joint counsel, appellant may have prevented an attack on himself by Nurre, a legitimate tactic often used by codefendants with separate counsel. We only point out the holding in *Holloway* to address the issue of whether the conflict of interest produced real rather than imaginary prejudice to appellant. We understand and agree that in Minnesota individual attorneys for each codefendant is the better and accepted practice.

Taking the facts as a whole, we find that the state met its burden of proving, beyond a reasonable doubt, that appellant was not prejudiced by the claimed attorney conflict of interest.

■ Appellant also argues that his right to effective assistance of counsel under the sixth amendment was violated. In order to establish a sixth amendment violation, appellant must show that an "actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed. 2d 333 (1980); *Crouse v. State,* 335 N.W.2d 236, 237 (Minn.1983); *State v. Holscher,* 417 N.W.2d 698, 702 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. Mar. 18, 1988).

An actual conflict exists in multiple representation situations where differing degrees of defendant culpability exist, such as when one defendant is a ringleader and major actor, and the other a follower and minor actor; here, courts assume that counsel is placed in a position of drawing unfavorable comparisons between codefendants. *See* 2 LaFave, *Criminal Procedure* § 11.9 at 91 (1984); *Holloway v. Arkansas,* 435 U.S. at 490, 98 S.Ct. at 1181; *Olsen,* 258 N.W.2d at 905. However, such differences in culpability must be "marked." *Parker v. Parratt,* 662 F.2d 479, 484 (8th Cir.1981).

Appellant claims that his culpability was minimal, at best, by comparison to Nurre's. Appellant now claims only an "awareness" of the corporation's complicity with another construction company, Loveall Construction Company, and that he did not *personally* submit collusive rigged bids or wilfully conspire with others to do so. Respondent argues that the record reveals appellant's full awareness of the Lundin corporation's collusive bidding practices and, in particular, the corporation's bid rigging collusion with Loveall. Appellant admitted that Lundin corporation submitted rigged bids, including the May 10, 1983, bid for which appellant, Nurre and the corporation were indicted by the grand jury. Although appellant did not sign the May 10, 1983, bid for which he was indicted, he knew and approved of Nurre's submitting it. The record discloses nothing unusual about the lack of appellant's signature on the bid.

Even though appellant did not personally sign the May 10, 1983, bid, his prior acquiesence and approval makes him liable in the eyes of the law with the signer, Nurre. Under the law, "person[s] may be held criminally liable as an aider and abettor without actively participating in the overt act constituting the primary offense; moreover, criminal intent may be inferred from * * * conduct *before* and after the offenses are committed." *State v. Goodridge,* 352 N.W.2d 384, 389 (Minn.1984) (emphasis added); *State v. Strimling,* 265 N.W.2d 423, 429 (Minn.1978) (holding corporate officer liable as aider and abettor in filing of false

reports even though reports were not authorized or approved of by officers).

The transcript from the plea hearing demonstrates that appellant approved rigged bids, including the May 10th bid, with full awareness that they were rigged. The transcript demonstrated that appellant, on his own, had signed earlier rigged bids. Appellant's straight forward admission of these facts constitutes a degree of criminal responsibility commensurate with Nurre's, his employee. Appellant was not a mere minor actor, and Nurre was not a major "ringleader."

## II.

### *Factual basis for the plea*

Absent a clear abuse of discretion, a postconviction court's decision will not be disturbed on appeal. *State v. Jacobs,* 292 Minn. 41, 44, 192 N.W.2d 816, 819 (1971). The standard for withdrawing a guilty plea after sentencing is whether withdrawal is necessary to correct a manifest injustice. *Id.;* Minn.R.Crim.P. 15.05, subd. 1. The burden is on petitioner at a postconviction proceeding to prove by a preponderance of the evidence the facts which would warrant withdrawal of a guilty plea. *Jacobs,* 292 Minn. at 45, 192 N.W.2d at 819; Minn.Stat. § 590.04, subd. 3 (1984).

Prior to acceptance of a guilty plea the court must determine whether the plea is accurate, voluntary and intelligent, and whether there is an adequate factual basis on the record. *State v. Trott,* 338 N.W.2d 248, 251 (Minn.1983); *State v. Lyle,* 409 N.W.2d 549, 551 (Minn.Ct.App.1987). In determining whether the plea is accurate, i.e., whether all the elements of the crime are satisfied, the test is whether the record supports the conclusion that the defendant committed an offense at least as serious as the crime to which he is pleading guilty. *Trott,* 338 N.W.2d at 251–52.

Appellant pleaded guilty to one count of allocating markets with a competitor, in violation of Minn.Stat. § 325D.53, subd. 1(1)(c). That section provides as follows:

Subdivision 1. Without limiting section 325D.51, the following shall be deemed

to restrain trade or commerce unreasonably and are unlawful:

(1) A contract, combination, or conspiracy between two or more persons in competition:

\* \* \* \* \* \*

(c) allocating or dividing customers or markets, functional or geographical, for any commodity or service.

"Contract, combination, or conspiracy" is defined by statute as "any agreement, arrangement, collusion, or understanding." Minn.Stat. § 325D.50, subd. 4 (1984).

The state correctly points out that appellant signed earlier rigged bids, and appellant, as corporate president, knew and approved of Nurre's actions in signing the rigged May 10th bid in question. We find the trial court had a proper factual basis to accept appellant's guilty plea.

Appellant has not met his burden of demonstrating a manifest injustice or an abuse of discretion by the trial court when it denied his petition for relief.

## DECISION

The trial court did not err by denying appellant's petition for postconviction relief.

Affirmed.