STATE of Alaska, Appellant,

v.

Mefail CELIKOSKI, Appellee.

No. A–4555.

Court of Appeals of Alaska.

Jan. 7, 1994.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellant.

Ben Esch, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

On October 1, 1991, Mefail Celikoski filed an application for post-conviction relief, alleging that he had been denied conflict-free representation as guaranteed by the United States and Alaska Constitutions.[1] Following a hearing, Superior Court Judge Milton Souter granted post-conviction relief. The state appeals. We affirm.

On January 9, 1986, Mefail Celikoski, Ajradin Celikoski, and Medzait Ramadanoski were indicted on six counts of third-degree misconduct involving a controlled substance. An Illinois attorney, Robert Novelle, was hired as counsel for Ramadanoski. Begin-

---

1. U.S. Const.Amend. VI; Alaska Const. Art. I § 11.

ning in January of 1986, an Alaskan attorney, Bill Bryson, acted as Novelle's local co-counsel in Ramadanoski's case. Novelle testified that he consulted Bryson for advice concerning appropriate statutes, sentencing, and plea bargaining procedures. Novelle's testimony concerning the substance of the conversations was vague and he did not remember whether he and Bryson had discussed a strategy for Ramadanoski's defense.

On March 4, Mr. Bryson entered an appearance for Celikoski. Celikoski testified that Bryson did not tell him that he was also acting as co-counsel for Ramadanoski.[2] Bryson testified that he did not remember telling Celikoski that he (Bryson) was also acting as co-counsel for Ramadanoski. Bryson recalled discussing the strength of the state's case with Novelle and whether each defendant was going to change his plea. Bryson also testified that both he and Novelle may have sat in on discussions with both defendants concerning whether or not the defendants were going to change their pleas. Bryson recalled being present on at least one occasion when Novelle met with Ramadanoski before Ramadanoski changed his plea. Bryson further testified that he and Novelle had discussed some strategy concerning Ramadanoski's defense. On April 22, both Celikoski and Ramadanoski changed their pleas to guilty.

During the post-conviction relief hearing, Judge Souter inquired of Bryson, "Was any of the advice that you gave Mr. Celikoski tempered by your concern for Mr. Ramadanoski's fate in the criminal system?" Bryson responded:

> I don't have specific recall of that. As I recall the case, both of them were in a situation where they would not have a very good chance at trial. And so at that point the advice was negotiate for the best disposition we could get. And that was to be done on behalf of each of them. And Mr. Novelle advised Mr. Ramadanoski, I advised Mr. Celikoski. As I previously stated, because they tended to trust Mr. Novelle because of his connection with family members, I believed that they each spoke with Mr. Novelle.

Bryson later stated, "I suppose that's the ultimate problem here in that none of us have a recall as to whether or not there were strategic advantages gained. I mean from what I remember of the case my advice would have been the same regardless of the role...."

At the post-conviction relief hearing, Celikoski testified that the judge who accepted his plea did not explain to him that Bryson was representing Ramadanoski, and that Celikoski never waived his right to conflict-free representation. Celikoski stated that no one had explained the dangers of dual representation to him.

Judge Souter granted Celikoski's application for post-conviction relief. Judge Souter found that Bryson's representation of Ramadanoski was more than a technical representation; he found that Bryson had advised Ramadanoski and provided practical representation. Therefore, he found that Celikoski had established dual representation by a preponderance of the evidence. Judge Souter stated that, under *Moreau v. State*, 588 P.2d 275, 284 (Alaska 1978), the burden of showing that Celikoski suffered no substantive harm then shifted to the state. Judge Souter concluded the state failed to meet this burden. Judge Souter emphasized that Bryson had been unable to declare, with certainty, that his representation of Ramadanoski

2. Rule of Professional Conduct 1.7 (formerly DRS–105) provides in pertinent part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client in the same or a substantially related matter, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

did not influence his representation of Celikoski.

The state argues that the trial court applied the wrong legal standard to Celikoski's application. In ruling on Celikoski's application, Judge Souter relied on the standard announced in *Moreau*. The *Moreau* court addressed the issue of joint representation of defendants in criminal trials, stating:

We do, however, recognize the dangers of joint representation to a defendant's right to counsel protected under both the United States and Alaska Constitutions. Minnesota has recently emphasized its disapproval of joint representation, and has established procedures to assure that any waiver of the sixth amendment right to conflict-free representation meets constitutional standards. *State v. Olsen*, 258 N.W.2d 898, 903–08 (Minn.1977). Henceforth, in that state, the trial judge must personally advise the defendant of potential dangers inherent in dual representation. If the record fails to establish a "satisfactory" inquiry, the burden shifts to the state to prove beyond a reasonable doubt that a prejudicial conflict did not exist. We approve this standard adopted by the Minnesota court, and it will be applied to Alaska cases tried after the mandate is issued in the instant appeal.

*Id.* at 284 (footnotes omitted). Judge Souter ruled as follows:

[T]he applicant, under *Moreau*, has to bear the burden of proof by a preponderance to show the ground for post conviction relief. Here the ground for post conviction relief is the improper joint representation not inquired into by the court, not waived by the defendant, Mr. Celikoski. And that ground has certainly been established here. There is absolutely no question in this record that Mr. Celikoski was represented by the same counsel who was representing a codefendant. [Celikoski] has

therefore established a sufficient ground for post conviction relief unless—unless under the *Moreau* case the state has shown beyond a reasonable doubt that the defendant suffered no substantive harm in the situation.

■ The state asserts that Judge Souter applied *Moreau* incorrectly because "[u]nder *Moreau*, Celikoski is entitled to relief if and only if Bryson had a 'prejudicial conflict' of interest due to his concurrent representation of Ramadanoski." However, the language in *Moreau* indicates that Celikoski does not bear the burden of proving prejudicial conflict. Once Celikoski establishes dual representation and the failure of the trial court to make an appropriate inquiry, the state bears the burden of proving an absence of prejudicial conflict.

The state also argues that Judge Souter should not have applied the *Moreau* standard, but rather should have applied the standard set out by the United States Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).[3] *Cuyler* holds that:

In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.

*Id.* at 348, 100 S.Ct. at 1718 (footnote omitted).

Unlike the instant case, however, *Cuyler* deals with a situation where the defendant was aware of his attorney's representation of his co-defendants. Moreover, in *Moreau* the Supreme Court of Alaska appears to have adopted a standard which is more favorable to defendants. We recognize that *Moreau* was decided before *Cuyler*. Although we cannot be sure that the Alaska Supreme Court would continue to apply the *Moreau* test in light of developments in the law since

---

**3.** Shortly after *Cuyler* was decided, Federal Rule 44(c) was adopted. Federal Rule 44(c) provides:

**Joint representation.** Whenever two or more defendants have been jointly charged and are represented by the same retained or appointed counsel the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of

his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

that decision, the *Moreau* opinion appears to have adopted a rule specifically for Alaska based on policy considerations. The court did not appear to be merely attempting to apply federal law and we, therefore, believe that we must follow *Moreau* in this case.

The state argues that Celikoski has the burden of establishing all facts necessary to his claim by a preponderance of the evidence because he is the petitioner in a post-conviction relief action. Therefore, the state claims, he must prove by a preponderance of the evidence both the existence of a conflict and that the conflict adversely affected his representation. Only then would the state be required to demonstrate that Celikoski's dual representation was harmless beyond a reasonable doubt.

■ Consistent with *Moreau*, however, in order to qualify for post-conviction relief, Celikoski need only establish that Bryson had undertaken the dual representation and that the trial judge did not "personally advise the defendant of potential dangers inherent in dual representation." *Moreau*, at 284. Once Celikoski proved this, and it is undisputed that he did,[4] he had met his burden of establishing all facts necessary to his claim and "the burden [then shifted] to the state to prove beyond a reasonable doubt that a prejudicial conflict did not exist." *Id.* Prejudice is not a part of a defendant's claim under *Moreau*.

To support its position, the state also cites two Minnesota cases, *Mercer v. State*, 290 N.W.2d 623 (Minn.1980) and *Lundin v. State*, 430 N.W.2d 675 (Minn.App.1988). In these post-*Moreau* cases, Minnesota courts denied post-conviction relief to defendants who claimed prejudice resulting from dual representation. However, in each of these cases, the appellants were aware of the dual representation at the time it occurred. *Mercer* at 626; *Lundin* at 678. In fact, in *Mercer*, the court found that Mercer suggested the joint representation in spite of his attorney's previous warning about the potential conflict. Furthermore, in both *Mercer* and *Lundin*,

appellate courts affirmed trial court decisions that appellants had not been prejudiced by dual representation.

■ Celikoski testified that he was never aware of Bryson's conflict of interest. Bryson testified that he did not recall advising Celikoski of the conflict. Although Judge Souter never made any specific factual findings concerning Celikoski's awareness of the conflict, we believe that on this record we must accept Celikoski's allegation that he knew nothing of Bryson's involvement in Ramadanoski's defense until years later.

We may reverse Judge Souter's finding, that the state failed to prove the absence of a prejudicial conflict beyond a reasonable doubt, only if that finding is clearly erroneous. The state has relied on the testimony of Celikoski's former attorney to establish that Celikoski was not prejudiced. Bryson recalled that the case against Celikoski was "a fairly strong case." Bryson stated that, to the best of his recollection, the charges against Celikosky resulted from alleged hand-to-hand drug transactions with an undercover police officer who had been involved in a prior prosecution of Celikoski. Bryson recalled that several of these transactions were recorded. Although Bryson stated that he thought his advice would have been the same regardless of the dual representation, he was unable to recall the case and was very equivocal in his responses. We believe that the evidence is such that Judge Souter could find that the state did not "prove beyond a reasonable doubt that a prejudicial conflict did not exist." *Moreau* at 284.

We accordingly AFFIRM Judge Souter's decision granting Celikoski's application for post-conviction relief.

---

4. The record suggests that the trial judge before whom Celikoski entered his plea was aware that Bryson was representing both Ramadanoski and Celikoski since Bryson filed an appearance for both defendants. Yet the trial court did not comply with the mandate of *Moreau* by advising Celikoski "of potential dangers inherent in dual representation." *Moreau* at 284.